**Phillip A. CLAY, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 49250.**

Court of Criminal Appeals of Texas.

Feb. 5, 1975.

Rehearing Denied Feb. 26, 1975.

Appellant argues that the prosecutrix did not testify that penetration was achieved by appellant's privates and that her testimony was just as consistent with the hypothesis that penetration was had with a screwdriver or with appellant's fingers.

The record reflects that on April 13, 1973, the prosecutrix was confronted by the appellant in her apartment. The appellant threatened to kill her if she screamed. He grabbed her wrist and twisted it so as to throw her to the floor and dragged her into the bedroom, where he tied her hands behind her with nylon hose. He placed a screwdriver at the base of her neck and repeated his threat to kill her if she screamed. Appellant took off all of the prosecutrix' clothes and then undressed himself.

The prosecutrix' testimony as it relates to the issue of penetration is as follows:

"Q. Okay. And, then what happened?

\*   \*   \*   \*   \*   \*

"A. He turned me over and tried vaginally.

"Q. This was on the floor?

"A. Yes.

"Q. All right. Did he achieve any sort of penetration?

"A. Yes.

\*   \*   \*   \*   \*   \*

"Q. Before I go any further, ma'am, while you were on the carpet—on the floor, there was vaginal penetration, right?

"A. Yes, sir.

\*   \*   \*   \*   \*   \*

"Q. Okay. All right, did he have a climax; could you tell?

"A. No, he didn't stay there long.

\*   \*   \*   \*   \*   \*

"A. He got me up and sat down on the bed, and he wanted me to do it orally.

\*   \*   \*   \*   \*   \*

Pat Priest, San Antonio, for appellant.

Ted Butler Dist. Atty., Fred Rodriguez, Michael Schill and Douglas C. Young, Asst. Dist. Attys., San Antonio, Jim D. Vollers, State's Atty., for the State.

## OPINION

DAVIS, Commissioner.

Appeal is taken from a conviction for rape. Punishment was assessed by the court at twenty-five years.

At the outset, appellant contends that the evidence is insufficient to support the conviction in that there is no showing that there was penetration by appellant's sexual organ.

"Q. Okay. And, then what occurred next?

"A. He decided he didn't want it that way, either. He kept changing around, and the last place was on the floor, vaginally.

"Q. On your back or your stomach?

"A. My back.

"Q. Okay. And there was penetration that time, also?

"A. Yes.

"Q. All right. At that point, could you tell whether or not he climaxed?

"A. I don't know definitely that he had one.

\* \* \* \* \* \*

"Q. And, you're on your back with your hands tied behind you, and he has entered you vaginally?

"A. Yes.

"Q. All right. Throughout the whole time, ma'am, are you telling us he had the screwdriver in his hand all this time?

"A. Yes."

Dr. Ruben Santos, Bexar County Medical Examiner, testified that he examined the prosecutrix on the day in question. He testified that there was sperm in the prosecutrix' vagina that had been deposited there as a result of intercourse. Dr. Santos stated that he "found some ligature marks around the wrists" of the prosecutrix.

Upon cross-examination, the prosecutrix was asked if appellant "looks like the man that raped you, or that this man is the man that raped you." Prosecutrix answered, "This man [appellant] is the man that raped me."

■ Appellant urges that the sperm found by the medical examiner may have been deposited by the husband of prosecutrix, who had left home earlier in the day.

In Harris v. State, Tex.Cr.App., 473 S.W. 2d 37, this Court held that complainant's testimony that appellant had sexual intercourse with her was sufficient to establish penetration. While rape has a legal connotation, we see no distinction in the two terms insofar as their showing penetration. We conclude that the prosecutrix' testimony that appellant was the "man that raped me" was sufficient to prove penetration. See Rhynes v. State, Tex.Cr.App., 479 S. W.2d 70. Further, penetration may be proved by circumstantial evidence. Nilsson v. State, Tex.Cr.App., 477 S.W.2d 592; Jackson v. State, Tex.Cr.App., 493 S.W.2d 860. A review of the testimony of the prosecutrix relative to penetration and whether appellant had a climax negates appellant's hypothesis that penetration was achieved with instrumentalities other than the sexual organ of appellant. The testimony of the medical examiner reflects penetration. We find that the evidence disproves every outstanding reasonable hypothesis except that of guilt of appellant, and conclude that the evidence was sufficient to support the conviction.

Appellant contends that the court erred by admitting into evidence the fruits of an illegal search.

The record reflects that appellant's locker was searched at Fort Sam Houston, and a comb and lighter were found which were subsequently introduced into evidence and identified by the prosecutrix as having been taken from her apartment. Appellant argues that since appellant was in jail at the time in question, there were no exigent circumstances to justify a warrantless search. Appellant further urges that permission granted officers by one Captain Keller to search appellant's locker was not sufficient under military law. Appellant says that under United States v. Grisby, 4 Cir., 335 F.2d 652, only the commanding officer of the installation or those to whom he has delegated authority may authorize a search. Appellant argues that the record in the instant case fails to reflect any dele-

gation of such authority by the commanding officer to Keller.

██ Assuming, arguendo, that the complained-of search was illegal, we conclude that the admission of the evidence was harmless error. In arriving at this conclusion, we are mindful that the error in question is one of constitutional dimension, and the error may not be declared to be harmless unless the reviewing court is able to declare that it was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); Holcomb v. State, Tex.Cr.App., 484 S.W.2d 929.

██ In the instant case, the evidence of appellant's guilt was not only overwhelming, but undisputed. No defense was offered. See Holcomb v. State, supra.

A review of the evidence reflects that the prosecutrix had seen appellant in the laundry room of the apartment complex earlier on the day in question. The attack occurred about 9:25 a.m., and the prosecutrix testified that appellant was in her apartment for at least fifty minutes. She stated she had "occasions to look at his face at different times." Observations were made from "close up." Prosecutrix observed that appellant had what appeared to be a "bite mark" on his upper left arm. "It had healed, but it left scars." The prosecutrix was positive and unequivocal in her identification of appellant. Before appellant left her apartment, the prosecutrix stated that he told her she was not to move for four minutes and, during this time, she could hear him "with some wires" in the living room and "assumed he was taking the television set." The prosecutrix stated that appellant took her watch, and that she later determined that the stereo unit with two speakers, a small transistor radio, an electric hot comb, and "my lighter" (described in earlier testimony as a gold lighter) were missing.

Brenda Watkins, who lived in an adjoining apartment at the time in question, testified relative to prosecutrix running into her apartment on the morning in question with nothing on but a tank top, "excited and crying," with her hands tied behind her and saying that she had been raped. Just "seconds" before prosecutrix came into her apartment, she saw a man pass in front of her apartment carrying a "record player with speakers on top." When asked if appellant were the man she saw on the occasion in question, she testified, "I just glanced at him and he looks similar, or you know, he looks like him, but I can't say for sure because I didn't get that long a look."

Norma Pastrana testified that she had known appellant at "three different forts" before moving to San Antonio, and that about the "middle of the month" of April (the offense in question occurred on April 13) appellant and one Vasquez offered to sell her a stereo, a small radio, a gold lighter, and a watch.

Barbara Hunt, a detective with the San Antonio Police Department, testified that she talked to the prosecutrix after the offense in question. As a result of her investigation, she went to Fort Sam Houston on April 20th to talk to appellant. She informed appellant that she wanted a picture of him, appellant agreed, and Detective Guerra took a picture of appellant. As a result of information obtained in her investigation, Hunt took a picture of appellant's upper left arm. This picture was admitted into evidence, appears in the record before us, and reflects a scar on the upper left arm which conforms in location and description to the scar prosecutrix described as being on the man who attacked her.

Prosecutrix' identification of appellant was unequivocal, detailed, and uncontested. Evidence coming from other witnesses corroborated the testimony of prosecutrix as to the identity of the appellant. The overwhelming and undisputed evidence of appellant's guilt dictates that the com-

plained-of error was harmless beyond a reasonable doubt.

Appellant contends that the court erred in admitting evidence of a conversation Detective Hunt had with appellant when appellant was viewed as a suspect and at a time his freedom of movement had been interrupted by military police.

■ Appellant's contention is directed to Detective Hunt's trip to Fort Sam Houston to interview appellant on April 20. We need not determine if Fifth and Sixth Amendment rights as enunciated in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, had been met, as urged by appellant, since Hunt's testimony relative to appellant telling her that he had been to the apartment complex where prosecutrix lived was elicited out of the presence of the jury, and such testimony was never introduced after the jury returned to the courtroom. The only testimony presented before the jury was that Hunt took appellant's picture, and Hunt testifying, "He agreed to having this done, and he submitted to having his picture taken." No error is shown.

■ Appellant contends that the introduction of the picture taken of appellant by Hunt and introduced into evidence constituted a violation of his rights under the Fifth and Sixth Amendments to the United States Constitution and Article 1, Section 10 of the Texas Constitution, Vernon's Ann.St. The taking of a picture of an accused does not constitute requiring an accused to give evidence against himself. Olson v. State, Tex.Cr.App., 484 S.W.2d 756; Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908; United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149. No error is shown.

■ In appellant's fourth contention, it is urged that the in-court identification of the appellant by the prosecutrix was tainted by improperly suggestive photographic techniques in a pre-trial identification.

The prosecutrix was called to the police station to view photographs a week after the crime. When presented with photographs, the prosecutrix was advised, "We think we have got your man, but you'll have to pick him out." Appellant contends that this statement constituted a very substantial likelihood of irreparable misidentification. We do not agree. The prosecutrix had an opportunity to view the appellant on two separate occasions in daylight. The second contact was at varying ranges of closeness for at least fifty minutes. There was nothing such as a mask obstructing the view of the prosecutrix. The prosecutrix' identification of appellant was unwavering.

■ A hearing was held out of the presence of the jury in accordance with the recommendation made in Martinez v. State, Tex.Cr.App., 437 S.W.2d 842, and the trial judge filed written findings that the identification was of independent origin and untainted by any photographs shown prosecutrix by investigating officers. The in-court testimony of the identifying witness is admissible as long as the record clearly reflects that the witness' prior observation of the accused during the offense was sufficient to serve as an independent origin for the in-court identification. Benson v. State, Tex.Cr.App., 487 S.W.2d 117; Ward v. State, Tex.Cr.App., 474 S.W.2d 471; Henriksen v. State, Tex. Cr.App., 500 S.W.2d 491. We find there was ample evidence to support the trial judge's finding.

In his last contention, appellant urges that the court improperly considered a pending indictment in assessing punishment.

The record reflects that at the punishment stage of the trial appellant asked that the court cause a pre-sentence report to be made and that the court defer assessing punishment until such a report had been made, and further urged that the court, after viewing such a report, "consider a

period of years that would enable the Defendant to be eligible for probation and would indeed urge that the Court grant the Defendant probation."

The court advised appellant that such a report would probably include the probation officer's findings as to "extraneous matters."

Counsel for appellant advised the court that he understood and, after counsel conferred with appellant regarding same, counsel for appellant again urged the court to cause a pre-sentence investigation to be made.

Appellant points to the following remarks of the court at a subsequent date when motion for probation was denied and punishment assessed:

"THE COURT: The Court does have a pre-sentence investigation report which the Court has reviewed considering the facts in the instant offense and the offense for which you are under indictment, and the Court is going to deny any probation, and as a matter of fact, the Court at this time will enter judgment."

Appellant urges that it was improper for the court to consider a pending indictment, and points to the fact that the record reflects that an acquittal subsequently occurred under such indictment.

This court has held the fact that a court considers the arrest record of a person applying for probation is not error. McNeese v. State, Tex.Cr.App., 468 S.W. 2d 800; Valdez v. State, Tex.Cr.App., 491 S.W.2d 415. It follows that consideration by a court of a pending indictment when a motion for probation is pending is not error. While not required to utilize a pre-sentence report, it is desirable in such cases that the trial court "use the probation officer's report and take into consideration all of the pertinent information to more intelligently determine if the person convicted is entitled to probation." McNeese v. State, supra. Further, the court is not required to disregard information in the pre-sentence report because hearsay statements are included. Brown v. State, Tex. Cr.App., 478 S.W.2d 550. No error is shown.

The judgment is affirmed.

Opinion approved by the Court.