William Michael **MASON**, Appellant,

v.

The **STATE** of Texas, Appellee.

Nos. 60777, 60778.

Court of Criminal Appeals of Texas, Panel No. 2.

May 2, 1979.

Rehearing Denied April 2, 1980.

Donald W. Rogers, Jr., court appointed on appeals, Houston, for appellant.

Carol S. Vance, Dist. Atty., Michael C. Kuhn and Jack C. Frels, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

Before DOUGLAS, DAVIS and DALLY, JJ.

OPINION

DALLY, Judge.

The appeal in Cause No. 60,777 is from a conviction for the offense of murder; the appeal in Cause No. 60,778 is from a conviction for the offense of aggravated robbery. The punishment in each cause, enhanced by a prior felony conviction, is imprisonment for fifty–five years.

The appellant asserts that he should be granted a new trial because the State breached a plea bargain and because the trial judge, after finding the appellant guilty, recessed the proceedings until he

---

could receive the probation officer's presentence investigation report.

The appellant entered pleas of guilty to both offenses in the same proceeding. His claim that the State breached a plea bargain agreement is based upon the following colloquy:

"THE COURT: I must advise you then, under both the laws of this state and the laws of the United States, that plea agreements are recognized and they are allowed to be made in the Court, but it's the duty of each of the attorneys, the attorneys for the Defendant and the State's attorney, to fully disclose to the Judge at the beginning of the proceedings any plea bargain agreement that has been made and has been recommended to the Judge. So, I'll ask you now to tell me for the record what you believe is to be recommended to the Court concerning punishment or are these matters being submitted to the Court without recommendation?

"MR. FRELS: Without recommendation.

"THE COURT: Mr. Mason, do you understand that if the Court hears your pleas of guilty and considers the matters without any recommendation being made, the Court will order a presentence investigation to assist the Court in determining what a proper punishment will be?

"DEFENDANT: Yes, I do.

"THE COURT: Are you agreeable to proceed on that basis?

"DEFENDANT: Yes.

"THE COURT: Mr. Toomey, is this agreeable with the Defense that the matters will be submitted to the Court for a pre–sentence investigation?

"MR. TOOMEY: Yes, Your Honor.

"THE COURT: Mr. Frels, is it agreeable with the State?

"MR. FRELS: The State is agreeable to proceeding, yes, your Honor. *However, the record must be clear that the State will take a very definite position on punishment at the time of the P. S. I.*

"THE COURT: Is this the understanding between the State and the Defense?

"MR. TOOMEY: Yes, your Honor.

"THE COURT: Mr. Mason, do you understand that as well?

"DEFENDANT: Yes, I do."

(Emphasis added.)

■ After the court had obtained the presentence investigation report, the State argued that the appellant ". . . ought to be sentenced for at least ninety–nine years or life." This argument was made without objection and appellant did not request to withdraw his plea of guilty. In the circumstances of this case we find that there was no breach of a plea bargain agreement. Cf. *Bass v. State,* 576 S.W.2d 400 (Tex.Cr.App.1979).

■ The appellant's complaint that the trial court improperly recessed the proceedings until he could receive the probation officer's presentence investigation report is without merit. Although there is some division in thought as to the use of the presentence investigation report, *see Angelle v. State,* 571 S.W.2d 301 (Tex.Cr.App.1975); *Bean v. State,* 563 S.W.2d 819 (Tex.Cr.App. 1978); *McKelvey v. State,* 570 S.W.2d 95 (Tex.Cr.App.1978), it was not error for the trial court to recess the proceedings to obtain the presentence investigation report.

The judgments are affirmed.

Before the court en banc.

## DISSENTING OPINION ON APPELLANT'S MOTION FOR REHEARING

CLINTON, Judge, dissenting.

Today a majority overrules without written opinion a motion for rehearing that appellant was granted leave to file in order, I thought, for the Court to decide and write on the problem presented. Because it does neither I respectfully dissent.

Essentially at issue here is the validity of a procedure utilizing a presentence investigation report that appears to have developed from what may be called the "local common law" of the jurisdiction from which

this appeal comes to us, and perhaps others as well. The panel opinion on original submission, without resolving it, characterized the prior treatment of the localized procedure by various panel opinions as reflecting "some division in thought" regarding use of the presentence investigation report under the local common law procedure. Before addressing the questions presented, it is appropriate that the decisions producing that division of thought be identified.

In *Thom v. State*, 563 S.W.2d 618 (Tex.Cr. App.1978), writing for a unanimous panel, Judge Odom, as is his wont, stated succinctly that "there is no bifurcated trial at *a plea of guilty trial*." [1] Thus, refusal of a trial court to permit an accused to call witnesses to testify at sentencing, after the trial court on an earlier day had found him guilty and assessed punishment, was not error. The next week the same panel handed down its opinion in *Bean v. State*, 563 S.W.2d 819 (Tex.Cr.App.1978); the trial court had bifurcated a plea of guilty trial in that, having found the accused guilty on his plea and without assessing punishment, the trial court reset the case "in order to obtain a presentence investigation." Eyeing that procedure, Presiding Judge Onion took the occasion to opine that "the proper use of such reports is to enable the trial court to pass on the issue of probation, not to determine the punishment to be assessed," *Bean*, supra at 821. He reiterated his views in *Nunez v. State*, 565 S.W.2d 536, 539–540 (Tex.Cr.App.1978) (Concurring Opinion). Some three months later, however, an entirely different panel decided *Angelle v. State*, 571 S.W.2d 301 (Tex.Cr.App.1978), in which the trial court had followed substantially the same procedure as in *Bean*. Judge Roberts developed a different view: ". . . [W]henever an issue of the proper punishment is present a presentence investigation and report may be utilized to assist the trial judge in the exercise of his discretion," *Angelle*, supra at 302. In the fall the principles expressed by Presiding Judge Onion in *Bean*, supra, and the terse pronouncement of Judge Odom in *Thom*, supra, were revisited by Judge Tom Davis for a unanimous panel in *McKelvey v. State*, 570 S.W.2d 951, 954 (Tex.Cr.App. 1978) and found to be still viable. October 18, 1978, the *Court's* Motion for Rehearing En Banc in *Angelle*, supra, was denied.

Pointing to some of these developments in his Motion for Rehearing En Banc, our appellant urges the Court to resolve the "confused state of the law discussed herein." We granted leave to file the motion with the idea that the chasm of disagreement over this matter may be firmly bridged. Laying first an historical foundation, I then turn to bridge-building.

Unlike the federal judicial system in which assessment of punishment, consideration of probation and pronouncement of sentence are always the sole prerogatives of the trial court, in Texas the right to trial by jury, demanded in our Declaration of Independence,[2] has been zealously guarded. See Article I, §§ 10 and 15, Texas Constitution and Article 1.05, V.A.C.C.P. Even when an accused in a felony case persisted in pleading guilty, if punishment was not absolutely fixed, the trial court was required to empanel a jury to assess punishment upon evidence submitted, Article 502, C.C.P.1925, "evidence" meaning "legal evidence, such as would be authorized to go before a jury," *Woodall v. State*, 58 Tex.Cr.R. 513, 126 S.W. 591, 593 (1910). Not until 1931 was one pleading guilty in a felony case less than capital permitted to waive trial by jury, see *McMillan v. State*, 122 Tex.Cr.R. 583, 57 S.W.2d 125 (1933) and *Hardin v. State*, 57 S.W.2d 127 (Tex.Cr.App.1933); nor until then was a trial court, acting alone, statutorily authorized in certain felony offenses to which an accused pled guilty before the court "to suspend the sentence . . .

---

1. All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

2. One of the grievances expressly stated is that the Mexican Government "has failed and refused to secure, on a firm basis, the right of trial by jury, that palladium of civil liberty, and only safe guarantee for the life, liberty, and property of the citizen." 3 Vernon's Texas Constitution 520.

During his good behavior," Article 776a, C.C.P. 1925.[3]

Whether by trial court or jury, however, punishment was assessed upon a consideration of evidence, generally the circumstances surrounding commission of the offense on trial, see *Bolton v. State*, 123 Tex.Cr.R. 543, 59 S.W.2d 833 (1933), and suspension of sentence was determined after presentation of evidence that the accused had never been convicted of a felony and testimony as to the general reputation of the accused, Articles 776, 776a, 778, C.C.P.1925. Anything like a presentence investigation report was alien to assessment of punishment or suspension of sentence.[4]

Not until more recent times did the Legislature undertake statutorily to draw contours and bounds for assessment of punishment.

The 1965 revision of the code provided the "Alternate procedure" for assessment of punishment, Article 37.07, V.A.C.C.P., then seen as becoming, perhaps, "the most controversial in the new Code," Special Commentary by Presiding Judge Onion. Section 2(b) then and § 3(a) now, the latter

making clear that it is "*regardless of the plea*,"[5] contemplates that whether the punishment be assessed by judge or jury *evidence* may be adduced "as to the prior criminal record[6] of the defendant, his general reputation and his character."[7] Of course, this Court held early on in *Allaben v. State*, 418 S.W.2d 517, 519 (Tex.Cr.App. 1967) that punishment evidence "is by no means so limited," *Basaldua*, supra, 481 S.W.2d at 854, and embraces that which is "legally admissible to mitigate punishment or *evidence* that is relevant to the application for probation, if any," *Allaben*, supra, 418 S.W.2d at 519. Moreover, after hearing prescribed evidence the trial judge assessing punishment, much like a jury, is mandated by § 3(d) to "forthwith announce his decision in open court as to the punishment to be assessed."

Meanwhile, the concept of probation under supervision was introduced into the criminal justice system. First enacted in Texas in 1947 as Article 781b, C.C.P.1925, adult probation was seen as an alternative to the suspended sentence law, *Ex parte Pittman*, 157 Tex.Cr.R. 301, 242 S.W.2d 159,

3. During this period of time even the constitutionality of legislative efforts to authorize trial courts to suspend execution of sentence imposing punishment determined by a jury was so uncertain, cf. *Snodgrass v. State*, 67 Tex.Cr.R. 615, 150 S.W. 162 (1912) with *Baker v. State*, 70 Tex.Cr.R. 618, 158 S.W. 998 (1913), that a constitutional amendment, Article IV, § 11 A, was submitted and adopted in 1935 to remove all doubts, Interpretive Commentary, 1 Vernon's Texas Constitution 803.

Acting with that constitutionally granted power and authority, the Legislature ten years later enacted what became Article 781b, C.C.P. 1925, supplementary to the extant suspended sentence law, Article 776 to 781, *id.*, and then ten years after that supplanted it with a more comprehensive adult probation and parole law of 1957, Article 781d, *id.* See generally Historical Note following Article 42.12, V.A.C.C.P.

4. The rule that only "legitimate testimony" is admissible to aid in assessment of "an adequate punishment" precludes, for example, evidence that an accused committed or attempted to commit an unrelated offense, *Carroll v. State*, 365 S.W.2d 786 (Tex.Cr.App.1963); but cf. *Beard v. State*, 146 Tex.Cr.R. 96, 171 S.W.2d 869 (1943).

5. And thereby vitiating majority view expressed in *Rojas v. State*, 404 S.W.2d 30 (Tex. Cr.App.1966), that the earlier version "is applicable only to pleas of not guilty before a jury," *Morales v. State*, 416 S.W.2d 403, 405 (Tex.Cr. App.1967); see also *Basaldua v. State*, 481 S.W.2d 851, 853-854 (Tex.Cr.App.1972); *Shiflett v. State*, 530 S.W.2d 548, 551 (Tex.Cr.App. 1975) (Opinion concurring in part and dissenting in part); *Nunez v. State*, 565 S.W.2d 536, 539 (Tex.Cr.App.1978) (Concurring opinion); but see *Nunez*, 565 S.W.2d at 540, note 1: "There appears no reason why such evidence could not be offered in pleas of guilty in felony cases *before the court or jury*."

6. In the statutory definition "prior criminal record" is limited to "a final conviction in a court of record, or a probated or suspended sentence that has occurred prior to trial, or any final conviction material to the offense charged," § 3(a), Article 37.07, V.A.C.C.P., 1978–1979 Cum.Ann.P.P. 249.

7. Character is a melange of inherent qualities of a person. Reputation, the collective opinion of the community as to those qualities, is evidence of character. See 2 Texas Practice 177, McCormick & Ray, Evidence § 1324.

162 (1952). Indeed, in what seems to have been an experimentation, the adult probation and parole laws in effect before 1965 vested in the court alone the decision to grant probation. Still, however, that decision was not ripe for making unless "the maximum punishment assessed against the defendant does not exceed ten years imprisonment," Article 781d, C.C.P.1925, whether assessed by jury or court (upon a guilty plea before the latter until 1965). Thus determination of amount of punishment continued to precede and qualify consideration of probation. And the factors considered were mainly unrelated: "when it shall appear to the satisfaction of the court that the ends of justice and the best interests of the public as well as the defendant will be subserved thereby." To aid and to inform the discretion of the trial court in respects not specified, every version of the probation law [8] empowered the trial court to direct a probation officer to investigate fully and make a written report concerning the circumstances of the offense, criminal record, social history and present condition of the defendant, including, whenever practicable, a physical and mental examination of the defendant. The privileged nature of the report was such that until 1977 [9] disclosure of its contents to the accused was a matter within the discretion of the trial court, *Rodriguez v. State*, 502 S.W.2d 13, 15 (Tex.Cr. App.1973). Rife with flagrant hearsay and other inadmissible accounts, *Bean v. State*, 563 S.W.2d 819, 821 (Tex.Cr.App.1978) (Onion, P. J., concurring), the material is nevertheless available to the trial court, *Brown v. State*, 478 S.W.2d 550 (Tex.Cr.App.1972) and *Valdez v. State*, 491 S.W.2d 415 (Tex. Cr.App.1973).

The experiment, if that is really what it was, ended with a comprehensive revision of the code of criminal procedure and its adult probation and parole law in 1965.[10] See Article 42.12, V A.C.C.P. and following commentaries and Historical Note.[11]

From the historical perspective provided by this review of concepts and applied principles in matters of punishment and probation, at least three conclusions are manifest: One, punishment, in the sense of prescribed penalties attached to classifications of offenses as in V.T.C.A. Penal Code, Chapter 12, is "forthwith" assessed against every guilty defendant and is based by the assessor on legally admitted evidence that is germane to the issue. Two, probation, as defined by the adult probation and parole law, Article 42.12, § 2, para. b,[12] V.A.C.C.P., is available only to a convicted defendant whose prior criminal record and amount of punishment assessed qualify for consideration and is granted in an exquisite exercise of discretion that need not be informed by more evidence than that basing assessment of the punishment. Three, a presentence investigation report is a creature of the adult probation and parole law, *id.* § 4, intended exclusively for use by the trial

8. See Section 2, Article 781b, C.C.P. 1925; Section 4, Article 781d, C.C.P. 1925; Section 4, Article 42.12, V.A.C.C.P. 1965.

9. Acts 1977, 65th Leg., ch. 47, p. 102, permits the accused and his attorney to see a copy of the report ·upon request.

10. Thus abrogated was the old suspended sentence law, see Introduction 1 V.A.C.C.P. xxii.

11. Returned to the jury was a meaningful role that, when played out, upstaged the trial court. Principally inserted were §§ 3a, 3b and 3c by which a jury that assessed punishment not to exceed ten years was, upon prior proper application of the accused, given the rather unfettered responsibility of recommending probation; if recommended, "probation shall be granted by the court . . . for the period recommended by the jury," and the court "may impose only" the conditions prescribed in § 6, § 3a. A jury recommended probation is not to be revoked "during his good behavior, so long as he is within the jurisdiction of the court and his residence is known, except in accordance with the provisions of Sec. 8 of this Article," § 3b. On the other hand, neither the recommendation of the jury nor a prior conviction "shall limit the power of the court to grant a probation of sentence," § 3c. Now, however, newly enacted § 3f constrains trial court grant of probation in specified offenses and circumstances.

12. "b. 'Probation' shall mean the release of a convicted defendant by a court under conditions imposed by the court for a specified period during which the imposition of sentence is suspended."

court alone in order to determine what terms and conditions of probation are appropriate to the particular defendant[13] –those of a jury grant of probation are legislatively imposed by provisions of § 6–as much as whether to allow probation in the first place.

From these three conclusions also readily apparent is that ordering and resetting the cause while it is being conducted and utilizing a presentence investigation report by a trial court for purposes of assessment of punishment is a hybrid procedure. The procedure is not expressly authorized by statute. Ordering the report is authorized only by the adult probation and parole act; utilizing it in assessing punishment is not authorized by Article 37.07, supra. Thus the question presented is whether the local common law procedure is a permissible use of the presentence investigation report. I find it is not.

When the accused is found guilty, a judgment of the trial court, whose requisites are itemized in Article 42.01, V.A.C.C.P., "is the declaration of the court entered of record, showing that the defendant be punished as has been determined," Lee v. State, 516 S.W.2d 151, 152 (Tex.Cr.App.1974). It is the declaration of the trial court that the accused is adjudged guilty of the offense found and is to be punished as has been determined, Article 42.01, id., § 1, items 9 and 10. For State constitutional purposes, Article IV, § 11–A,[14] the judgment records the "conviction" only after which a trial court is empowered to grant probation. Thus, it was pointed out in Nealy v. State, 500 S.W.2d 122, 125 (Tex.Cr.App.1973):

"The judge or jury may grant probation only after conviction. . . . When the probation is granted only the imposition of the sentence is now suspended. . . . Thus, the Adult Probation and Parole Law affects sentencing only, not conviction."

Assessment of punishment is, as demonstrated ante, based on deliberation of relevant, competent, probative evidence properly admitted for consideration of the assessor. I take this occasion to confirm the statement in Thom, supra, that "there is no bifurcated trial at a plea of guilty trial." But, whether unitary or bifurcated, the hearing on punishment is when "evidence may be offered by the state and the defendant as to the prior criminal record of the defendant, his general reputation and his character," Article 37.07, § 3(a), supra, and as to matters in mitigation and the application for probation, if any, Allaben, supra, Basaldua, supra. What is clearly contemplated is a proceeding that is adversary in nature. While it is not mandatory that the State offer evidence germane to punishment in order for it to be fixed at a term in excess of the minimum, Morales v. State, 416 S.W.2d 403 (Tex.Cr.App.1967) and Wright v. State, 468 S.W.2d 422, 424 (Tex.Cr.App.1971), that which is tendered is not only restricted but also must comply with rules of evidence to be admitted, e. g., Mullins v. State, 492 S.W.2d 277, 279[15] (Tex.Cr.App.1973); Ramey v. State, 575 S.W.2d 535, 537[16] (Tex.Cr.App.1978) and Porter v. State, 578 S.W.2d 742, 748[17] (Tex.Cr.App.

13. The notion is implicit in, e. g., Salinas v. State, 514 S.W.2d 754, n. 1 (Tex.Cr.App.1974); Tamez v. State, 534 S.W.2d 686, 691 (Tex.Cr.App.1976) and Hernandez v. State, 556 S.W.2d 337, 342 ·343 (Tex.Cr.App.1977).

14. "Section 11-A. The Courts of the State of Texas having original jurisdiction of criminal actions shall have the power, after conviction, to suspend the imposition or execution of sentence and to place the defendant upon probation . . . ."

15. "The statute does not permit the State to show the details of the offenses resulting in such convictions, or extraneous offenses, not resulting in final convictions."

16. "The admission of the entire probation report violated the Legislature's mandate in two respects. * * * Second, it lists in several different places eight extraneous offenses alleged to have been committed by the appellant, none of which resulted in a final conviction and three of which . . . were pending at the time of trial. The introduction of such evidence was prejudicial to the appellant and calls for reversal." [Original emphasis]

17. "While the facts contained in the documents in question may have been relevant to punishment, the manner in which the State sought to prove those facts denied appellant his constitutional rights of confrontation and cross-examination."

1979); *Tezeno v. State*, 484 S.W.2d 374, 379–380 [18] (Tex.Cr.App.1972). The restrictions and the rules must be scrupulously honored for assessment of punishment is of constitutional dimension, *Townsend v. Burke*, 334 U.S. 736, 741,[19] 68 S.Ct. 1252, 1255, 92 L.Ed. 1690 (1948).

On the other hand, as I have also developed *ante*, the presentence investigation report is constrained only by the meager statutory direction that authorizes it: a probation officer shall fully investigate and report the circumstances of the offense, criminal record, social history and present condition of the defendant, including whenever practicable a physical and mental examination of him. This the trial court may use in exercising its absolute and unreviewable discretion to grant or deny probation, e. g., *Saldana v. State*, 493 S.W.2d 778 (Tex.Cr. App.1973), *Flournoy v. State*, 589 S.W.2d 705, 707 (Tex.Cr.App.1979). Endowed with unfettered discretion, the trial court may receive and consider matters which are not otherwise properly presented and received on the issue of punishment. For example, reports of prior arrests without convictions are not admissible on punishment when offered by the State, *Bermudez v. State*, 504 S.W.2d 868, 872 (Tex.Cr.App.1974), but may be considered by the trial court in determining whether to grant probation, *Pitts v. State*, 560 S.W.2d 691 (Tex.Cr.App.1978)–after punishment has been already assessed, *McNeese v. State*, 468 S.W.2d 800, 801 (Tex. Cr.App.1971). Similarly, following assessment of punishment, a trial court does not err in ordering a presentence investigation report and in considering it on application for probation, although the report contains "hearsay accusations," *Brown v. State*, 478 S.W.2d 550 (Tex.Cr.App.1972); challenged prior offenses, *Valdez v. State*, 491 S.W.2d 415 (Tex.Cr.App.1973) or an unseen psychological report, *Rodriguez v. State*, 502 S.W.2d 13 (Tex.Cr.App.1973).

These settled separate and disparate procedures and processes for assessment of punishment and consideration of probation were never blurred, so far as I have ascertained, until *Clay v. State*, 518 S.W.2d 550 (Tex.Cr.App.1975). There appellant squarely contended that the trial court "improperly considered a pending indictment in assessing punishment," *id.*, at 554. Having been found guilty by a jury, at the punishment hearing before the trial court the *accused asked* that a presentence report be made, that assessment be deferred until receipt of the report and that the trial court consider it and assess "a period of years that would enable the Defendant to be eligible for probation and . . . that the Court grant the Defendant probation;" although cautioned by the trial court that such a report might well include findings as to "extraneous matters," the accused and his lawyer persisted in requesting the report. The report revealed the pending indictment and the record showed that the trial court expressly considered it in denying probation *before* assessing punishment and entering judgment. Focusing on the denial of probation, and without remarking on the somewhat unusual order of proceeding, the *Clay* court pointed to the lessons of *McNeese* and *Valdez*, supra, and thought it followed that "consideration by a court of a pending indictment when a motion for probation is pending is not error." However, the Court did not expressly approve consideration of a pending indictment as a factor in assessing punishment, though it did opine that error had not been shown in the situation that clearly had been created by appellant, himself.

The pleas of guilty to the primary offense and of true to enhancement allegations in the two causes now before the Court were entered, and the plea hearing held in Janu-

---

**18.** Offer of testimony concerning sociological, economic, political and overall conditions of appellant's neighborhood properly rejected because "we fail to perceive how the evidence . . . would be relevant either in terms of the statute or in terms of the test set forth in *Allaben*, supra."

**19.** ". . . [T]his prisoner was sentenced on the basis of assumptions concerning his criminal record which were materially untrue. Such a result, whether caused by carelessness or design, is inconsistent with due process of law, and such a conviction cannot stand."

ary 1978 [20]; a hearing, denominated by the court reporter as "Pre–sentence Investigation," was held in April 1978, at the outset of which the trial court acknowledged having been furnished with a pre-sentence investigation report and ascertained that counsel for the State and for appellant each possessed a copy of it,[21] during the course of which appellant adduced testimony from three witnesses on the issue of punishment and at the end of which each counsel submitted argument as to appropriate period of confinement based on the report and evidence; pronouncement of punishment to be assessed by the trial court was deferred until the following Monday, whereupon a term of confinement for fifty five years was affixed in both cases; formal sentences were imposed ten days thereafter. The panel opinion in *Angelle v. State*, 571 S.W.2d 301 (Tex.Cr.App.1978) had not been rendered; it was handed down July 12, 1978.

I criticize such procedure and process in two crucial respects. First, what the statutes fashion as a unitary trial on a plea of guilty was bifurcated–a practice denounced in *Basaldua v. State*, supra, at 854, and denied in *Thom v. State*, supra. Second, although probation was precluded from consideration by the trial court, a presentence investigation report was ordered and utilized by it in assessing punishment–a process not authorized by statute, contrary to traditional procedures and rules of evidence and, of late, criticized on every occasion by this Court, except one: *Angelle v. State*, supra.[22] That one is difficult to follow.

*Angelle* is *sui generis*. Its corc finding, ". . . whenever an issue of the proper punishment is present presentence investigation and report may be utilized to assist the trial judge in the exercise of his discretion," is stated without explication. To that finding it then applies, *sans* rationale, the holdings of *McNeese, Valdez* and *Clay*, as to propriety of hearsay statements, unadjudicated criminal charges and a pending indictment being considered by a trial court in passing on probation, to consideration of punishment *even where probation is not an issue.* From everything developed thus far in this opinion, I cannot perceive any explication or rationale to support the finding and holding of *Angelle.*

The Court should confirm and reiterate that there is no bifurcated proceeding at a plea of guilty trial.

It should hold that in a plea of guilty trial where the minimum punishment statutorily prescribed for the offense, with or without enhancement, exceeds the maximum term of years, of confinement that may be probated, a trial court is not authorized to order, receive and consider a presentence investigation report in assessing punishment by confinement. In sum, the local common law procedure utilized here should be rejected by the Court.

Nevertheless, because it was in vogue at the time, all parties knowingly participated in it without objection and, indeed, appellant's counsel sought to derive benefit from it for his client and, further, since I cannot find that the punishment actually assessed by the trial court was founded independent-

---

**20.** In its clear and comprehensive admonishment the trial court made certain that appellant understood that the court "will be following the range of punishment in each case of not less than 15 years to 99 years or life," thereby precluding consideration of probation, Article 42.12, § 3, V.A.C.C.P.

**21.** I am cognizant that, once it determined from the State that the guilty pleas were being made "without recommendation" from the State as to punishment, the trial court stated that it "will order" a presentence investigation to assist in its determination of "proper punishment" and solicited and obtained from appellant and his attorney a verbal acknowledgment

that each was "agreeable to proceed on that basis." However, since all concerned were following what I have called the local common law procedure of the jurisdiction, for purposes of this opinion I attach no particular significance to their acquiescence to do so. I take it, though, the Court has concluded that by being agreeable then our appellant may not protest now, and we must await the day when an accused refuses to comply with the local common law procedure.

**22.** For reasons given in discussing *Clay v. State, ante*, I do not regard it as actually holding what *Angelle* does.

ly in the presentence investigation report,[23] that the procedure and process were erroneously followed does not impel a reversal of the judgment of conviction in this cause.

Yet, because the Court overrules the motion for rehearing without written opinion and thereby perpetuates the recognized "division of thought" as to use of a presentence investigation report in assessing punishment, I respectfully dissent.

ONION, P. J., and ROBERTS and PHILLIPS, JJ., join.

---

**23.** The truth of the matter is that the tenor of the report, steeped in factual detail, is sympathetic to the plight of our now twenty six year old appellant. Disclaiming faultfinding, the report accurately remarks that from his prior criminal record–admissible in any event on punishment–appellant "has apparently established himself as a young habitual criminal," so that "regardless of the underlying causes of his criminality [appellant] must be removed from society and a long term in the Texas Department of Corrections is recommended." The State urged confinement for ninety nine years or life; counsel for appellant pretermitted a specific number, arguing from certain factors that he did not believe "a long term sentence would serve any good."