Elgin BALDWIN, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 51266.

Court of Criminal Appeals of Texas.

June 23, 1976.

Stan Brown, Abilene, for appellant.

Ed Paynter, Dist. Atty., and John W. Weeks, Asst. Dist. Atty., Abilene, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION ON STATE'S MOTION FOR REHEARING

DOUGLAS, Judge.

Appellant was convicted for the felony offense of credit card abuse under V.T.C.A., Penal Code, Sec. 32.31(b)(4). Punishment was assessed by the jury at two years.

On original submission, the judgment was reversed because the indictment did not allege an element of the theft statute. The prior opinion is withdrawn.

Appellant contends that (1) the evidence is insufficient to support the conviction; (2) the court erred in failing to quash the indictment; (3) the court should have charged on circumstantial evidence; and (4) the court erred in excluding testimony of a reputation witness.

### Sufficiency of the Evidence

Brenda White and her husband Paul White operated White's Color Photography in a shopping center in Abilene. On October 22, 1974, she put her purse by a chair in their store. The purse contained a billfold in which she had the Master Charge credit card alleged in the indictment. She went to another store in the center. Within a few minutes her husband called her. She started toward their store and saw appellant with her billfold in his hand.

Paul White testified that he was in the back of their store when he heard someone enter. As White entered the front part of the store, he saw appellant standing by the chair where his wife put her purse. Appellant was "rising" and appeared to be nervous and said, "Oh, you scared hell out of me. I didn't know anyone was here." After appellant left, White immediately went to his wife's purse and her billfold was not in it. He later saw appellant in the shopping center and got the billfold from him.

Clyde Watson, an Abilene Policeman, who also operated a television store in the shopping center where the Whites operated their business testified he saw appellant walk by his store in a hurry. Then he saw Paul White running toward him. Watson called for the appellant to stop and told him that he was a police officer. Appellant had a light blue billfold in his hand. He arrested appellant.

Appellant testified that he went into White's store. He saw a purse on the floor with a billfold by it. He picked up the billfold at about the time Paul White came into the room. He related that this scared him. He talked with White about some photographs and then left the store with the billfold in his hand. He went and put his hat and jacket in his car because he was scared. He knew that White was going to call the cops. Appellant walked toward a piano store and stood behind a bush. After he was stopped by Officer Watson, he returned the billfold to White. He also related that he did not intend to steal the billfold.

Appellant admitted taking the property. This with the other testimony was sufficient to support the conviction. The jury was not bound to accept his testimony that he did not intend to steal.

## SUFFICIENCY OF THE INDICTMENT

Next appellant contends that the court erred in overruling the motion to quash the indictment. The indictment alleged that Elgin Baldwin, Jr., "did then and there unlawfully, knowingly and intentionally steal a Master Charge credit card belonging to and from Brenda White."

Sec. 32.31(b)(4), supra, provides:

"A person commits an offense [credit card abuse] if . . . he steals a credit card or, with knowledge that it has been stolen, receives a credit card with intent to use it, to sell it, or to transfer it to a person other than the issuer or the cardholder . . . ."

The original opinion held that the indictment was insufficient because it did not allege that Baldwin took the card with the "intent to deprive the owner of the property" and cited *Worthington v. State*, 469 S.W.2d 182 (Tex.Cr.App.1971), a case under the general theft statute of the 1925 Penal Code.

In the present case, the motion to quash the indictment was on a different ground than the one relied upon in appellant's brief. The motion to quash the indictment in part alleges:

". . . the indictment herein is insufficient in law because it merely alleges that the Defendant did unlawfully, knowingly and intentionally obtain a Master Charge credit card from one Brenda White. Said indictment does not allege, as required by the provisions of Sec. 32.-31(b)(4) of the Texas Penal Code, that the credit card was obtained or stolen by Defendant with the intent to use it, sell it, or transfer it to a person other than the issuer or the cardholder . . ."

The contention in the brief was not presented in a motion to quash. The indictment charges the first mode in which the offense of credit card abuse may be committed under Sec. 32.31(b)(4), supra.

After further consideration, it appears that the indictment in the present case is sufficient to allege the offense of credit card abuse. The indictment followed the terms of Sec. 32.31(b)(4), supra, when it alleged that appellant did "knowingly and intentionally steal" the credit card.

This was sufficient to put appellant and his attorney on notice of the crime (credit card abuse) for which he was charged. There was no such offense titled credit card abuse in the 1925 Code.

We hold that it is not necessary to define theft in a credit card abuse case just as it is not necessary to define theft or set out all of its elements in a burglary case.

Ordinarily an indictment which charges an offense in the terms of the statute is sufficient. See 30 Tex.Jur.2d, Indictment and Information, Sec. 27, n. 13, and cases collated. Since the offense was charged in the terms of the statute, and the pleading gives adequate notice in fact, it is sufficient. See *American Plant Food Corp. v. State*, Tex.Cr.App., 508 S.W.2d 598.

This is like the cases under the former Code holding that an indictment charging ordinary theft under Art. 1410 is sufficient for a theft by false pretext conviction under Art. 1413. See *Cameron v. State*, Tex.Cr.App., 401 S.W.2d 809, and *Cameron v. Hauck*, 5 Cir., 383 F.2d 966.

V.T.C.A., Penal Code, Sec. 1.05, requires the application of Sec. 2.01 of the Code Construction Act (Art. 5429b-2, V.T.C.S.):

"Words and phrases shall be read in context and construed according to the rules of grammar and common usage. Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly."

As used in Sec. 32.31(b)(4), supra, "steal" has that technical meaning given it in Sec. 32.01. In common usage, the term "steal" means "to take or appropriate without right or leave and with intent to keep or make use of wrongfully". *Webster's New Collegiate Dictionary*, 1975. Both the "technical" meaning and "common usage" of the term "steal" carry with their use the "intent to deprive".

As stated above, such an application to the case at bar conforms to the intent of the Legislature. The new Penal Code was drafted with the intent to eliminate many of the archaic practices which had become entrenched in our law and which served no useful legal purpose. In *Gonzales v. State*, Tex.Cr.App., 517 S.W.2d 785, this Court recognized that the new Penal Code altered in some way the pleading requirements in burglary. There the Court stated:

". . . Under the definitions of burglary and theft contained in the V.T.C.A., Penal Code, effective January 1, 1974, supra, although the proof will involve the necessity of establishing the *intent* to commit the offense of theft (Sections 31.-02 and 31.03, V.T.C.A., Penal Code), the constituent elements of the particular

theft or intended theft need not be alleged in an indictment or information for burglary with intent to commit theft."

■ Similarly in *Earl v. State*, Tex.Cr. App., 514 S.W.2d 273, the Court recognized that when a term has been legislatively defined the necessity for placing that definition in an indictment is dispensed with, when the substantive offense is defined in terms of a word or words that have been assigned technical meanings.

In *Vaughn v. State*, Tex.Cr.App., 530 S.W.2d 558, the indictment charged an offense of burglary with intent to commit a felony. This Court held it was sufficient to allege the felony offense as "injury to a child" rather than all of the constituent elements of such offense.

The only other issue that remains is whether Art. 21.05, V.A.C.C.P., requires that the indictment specifically allege "the intent to deprive the owner of the property". The material portion of this statute provides:

"Where a particular intent is a material fact in the description of the offense, it must be stated in the indictment."

This provision of the Code of Criminal Procedure has a counterpart in the new Penal Code: Chapter 6 (Culpability Generally). Chapter 6 provides for four "culpable mental states" which are to be used in the Penal Code in defining the various offenses. These culpable mental states—intentional, knowing, reckless and criminal negligence—set forth the various degrees of guilty knowledge which are requisite before culpability attaches.

■ Unless the definition of an offense clearly dispenses with the requirement of a culpable mental state (a strict liability offense), one of the four above-mentioned "intents" is mandatory. Offenses under the new Code comply with these requirements, and the definition of the offense will generally provide for one of them. If the definition of an offense does not prescribe a culpable mental state, a culpable mental state is nevertheless required unless the definition plainly dispenses with any mental

element. [V.T.C.A., Penal Code, Sec. 6.02(b)] Further, if the definition does not prescribe a culpable mental state but one is required, intent, knowledge or recklessness suffice to establish criminal responsibility. V.T.C.A., Penal Code, Sec. 6.02(c).

■ In the case at bar, Sec. 32.31(b)(4), supra, does not prescribe one of the culpable mental states. Since the statute does not indicate that the intent was to make this a strict liability offense, Sec. 6.02(b) and (c) require the conduct be done either intentionally, knowingly or recklessly, and one or more of these culpable mental states must be alleged in the indictment. The indictment in the instant case does in fact do this by alleging "knowingly and intentionally". No other intent appears in the description of the offense, and no other need be alleged. Art. 21.05, V.A.C.C.P.

To require a definition of most of the words or terms in setting out the elements of an offense would be contrary to the intent of the Legislature when it adopted the new Penal Code.

*Charge on Circumstantial Evidence*

■ Appellant admitted taking the property and leaving the store with it. When he was stopped by Officer Watson, he returned it. This amounts to direct evidence of the taking. When an accused admits committing the act and only the intent is at issue, no charge on circumstantial evidence is required.

The applicable rule is found in *Smith v. State*, Tex.Cr.App., 470 S.W.2d 696, where it is written:

"Where the only element proved by circumstantial evidence is that of intent, no charge upon circumstantial evidence is required . . ."

We hold that the court did not err in refusing the charge.

*Exclusion of Evidence*

At the punishment stage of the trial Bobbie Jackson testified that he knew appellant's general reputation as a peaceable, law abiding citizen. The State's objection

on the ground that the witness had not discussed such reputation with anyone in the community was sustained.

In *Barber v. State,* 168 Tex.Cr.R. 168, 324 S.W.2d 553, this Court held that a witness does not have to hear the reputation of an accused brought to question or discussed before he can testify that such reputation is good. This is different from the rule where a witness proposes to testify that another's reputation is bad. See Texas Practice, McCormick and Ray, Sec. 653, p. 493.

 In the present case, the court should have permitted the witness to answer. However, when the objection was sustained, the witness was not asked for the purpose of the bill of exception what his answer would have been. There was no proffer of what his answer would have been.

In *Brown v. State,* Tex.Cr.App., 438 S.W.2d 926, the trial court sustained an objection to the testimony of a reputation or character witness. This Court wrote:

"The record contains no offer of proof. It is not shown whether the character witnesses were to testify as to the character or reputation of the appellant, her husband, or the deceased. Nothing is presented for review. *Hill v. State,* 403 S.W.2d 797; *Johnson v. State,* 379 S.W.2d 329; *Boyett v. State,* Tex.Cr.App., 368 S.W.2d 769. See 13A Texas Digest Criminal Law, Key 1120(3); 5 Tex.Jur.2d 354, Sec. 209."

In *Alardin v. State,* Tex.Cr.App., 491 S.W.2d 872, this Court wrote:

"Absent a showing of what the excluded testimony would have been or an offer of proof in the form of a statement to the judge, the matter is not properly before us for review. *Brown v. State,* Tex.Cr. App., 475 S.W.2d 938, 953; *Elliott v. State,* Tex.Cr.App., 475 S.W.2d 239. See particularly *Haynes v. State,* Tex.Cr. App., 468 S.W.2d 375."

No reversible error has been shown. The motion for rehearing is granted and the judgment is affirmed.

ROBERTS, J., concurs in the result.