Robert E. HEDICKE, Appellant,

v.

The STATE of Texas, Appellee.

No. 1079–86.

Court of Criminal Appeals of Texas,
En Banc.

June 21, 1989.

Rehearing Denied Sept. 13, 1989.

Certiorari Denied Jan. 16, 1990.

See 110 S.Ct. 840.

Robert B. Wales, El Paso, for appellant.

Steve W. Simmons, Dist. Atty., and Robert Dinsmoor, Asst. Dist. Atty., El Paso, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

WHITE, Judge.

Appeal is taken from a conviction for felony theft over $10,000. Appellant pled guilty and elected to have the jury assess punishment. Appellant filed an application for probation which the jury denied in assessing punishment at eight years imprisonment.

The Eighth Court of Appeals, in an unpublished panel opinion, unanimously affirmed the conviction. *Hedicke v. State*, No. 08–84–00219–CR (Tex.App.—El Paso, 1986). We granted appellant's petition for discretionary review to determine whether the Court of Appeals correctly upheld the trial court's action of excluding defensive character testimony at the punishment phase of trial. *See*, Tex.R.App.Proc., Rule 200(c)(4). Although we ultimately reach the same result as the court below, we do so for very different reasons.

At the punishment phase, and after the defensive testimony of the defendant and the director of the Adult Probation Department Restitution Center, the trial court, following a bench conference off the record, called the remaining defense witnesses into the courtroom and sua sponte admonished them as follows:

> Ladies and gentlemen, Mr. Wales [defense counsel] has informed me that you have been summoned here as character

witnesses. Now, a character witness is a very restricted kind of a witness. You are not going to testify about the facts in the case. You are limited to testifying about whether you know the defendant, what [are] the circumstances under which you know him, and then the question do you know his reputation. That does not mean what is your personal opinion, but do you know his reputation for—if the question is asking for his reputation for truth and voracity [sic] in the community in which he lives, your answer to that has to be either yes or no. You can't elaborate.

> Then the question is is that reputation good or bad, and your answer has to be good or bad, and you can't elaborate on your answer.

> . . . .

> I'm sorry, I know everybody wants to come down here and wants to speak for a friend and wants to say more than that, but the law does not permit it. We'll just get into long—I've seen witnesses do it hundreds of times.

Appellant objected to the admonishment in that it denied him the opportunity to elicit testimony from these witnesses concerning specific instances of good conduct and positive personal opinions. His objection was overruled.

Appellant's present challenge to the trial court's limitation of defensive character testimony is basically two-fold: that the court erroneously precluded (1) testimony concerning specific instances of good conduct and (2) opinion testimony. We will uphold the trial court's ruling in the former but the ruling as to the latter is erroneous.

Concerning the court's exclusion of specific instances of conduct, Article 37.-07, Sec. 3(a), V.A.C.C.P., states, in pertinent part,

> Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state or the defendant as to the prior criminal record of the defendant, his general reputation and his character.[1]

---

1. Although applicable at the time of the instant trial in this form, this statute has since been

In *Murphy v. State*, 777 S.W.2d 44 (Tex.Cr. App.1989) (Opinion on Rehearing), this Court overruled a substantial amount of caselaw to hold that specific instances of conduct, even when offered as relevant to a defendant's application for probation, are generally inadmissible.[2]

In the instant case, appellant wanted to introduce testimony concerning specific instances of good conduct. Based upon *Murphy, supra*, we conclude the trial court correctly precluded such testimony. Thus, appellant's first challenge to the court's limitation of character evidence at punishment is overruled.[3]

Appellant secondly urges error in the trial court's exclusion of opinion testimony. Article 37.07, Sec. 3(a), *supra*, explicitly authorizes the admissibility of the defendant's "prior criminal record ... his general reputation *and* his character."[4] Art. 37.07, Sec. 3(a), *supra*. So the question becomes a determination of what is meant by the term "character" under 37.07, and whether opinion testimony is included within its meaning. This question brings directly to the forefront the pervasive and historical misunderstanding of what character evidence encompasses. As anomalous as it may seem, although Art. 37.07, Sec. 3(a) has been in effect in almost the same form for over twenty years,[5] this appears to be a case of first impression as to the exact meaning of the term "character" in this context.[6] In dealing with this

point, the Court of Appeals understandably did not even attempt to make sense of the caselaw. The court found that even if there was error in excluding all opinion testimony, it was harmless, with the totality of their legal analysis being, "[c]ase law is somewhat less than clear as to what is and what is not error in the area of exclusion of character evidence under 37.07." Ironically, we finally specifically deal with this question only after it has been statutorily resolved. *See*, fns. 1 *ante* and 7 *post*. Nonetheless, we offer the instant opinion as belated clarification.

▆▆ At the present time it should be crystal clear that character evidence is nothing more than a very generalized term which describes a broad category of evidence. Character comprises a melange of personality traits and consequently there are varying evidentiary ways to prove character. *Butler v. State, supra* at 614; *Mason v. State*, 604 S.W.2d 83, 86 (Tex.Cr. App.1979) (Clinton, J., dissenting); *Ward v. State*, 591 S.W.2d 810, 819 (Tex.Cr.App. 1978) (on Motion for Rehearing, Douglas, J., dissenting); 2 McCormick and Ray, Texas Practice, Evidence sec. 1324. There are three basic methods of proving character: (1) reputation of the person in the community; (2) personal opinion testimony of witnesses who know the person; (3) specific instances of conduct of the person from which inferences may be drawn. *See,*

---

substantially altered. *See*, Art. 37.07, Sec. 3(a), V.A.C.C.P. (Supp.1988); Tex.R.Crim.Ev., Rules 404(c) and 405(a).

**2.** This writer dissented to the majority opinion in *Murphy*, and although still standing by my original position, I recognize allegiance to stare decises and thus abide by the rule of law adopted by a majority of this Court.

**3.** Appellant also urges a Due Process violation involving a restriction on his constitutional right to present evidence in mitigation of punishment under the restrictive *Murphy* reading of Art. 37.07, Sec. 3(a). Although such an argument presents interesting and provocative issues, it was not argued at trial or on direct appeal but was only urged for the first time in his motion for rehearing. Thus, this question, not having been raised or addressed by the court below, is waived as untimely.

**4.** Emphasis supplied throughout unless otherwise indicated.

**5.** Although reading the same, sec. 3(a) was originally contained in sec. 2(b) of 37.07, but was subsequently renumbered. When this section was renumbered to 3(a), in 1967, the following sentence was added: "The term prior criminal record means a final conviction in a court of record, or a probated or suspended sentence that has occurred prior to trial, or any final conviction material to the offense charged." Acts 1967, 60th Leg., p. 1739, ch. 659, sec. 22.

**6.** Although past opinions have recognized the linguistic problem concerning the meaning of character evidence under 37.07, they have skirted direct examination of the issue. *See, e.g., Butler v. State*, 640 S.W.2d 612, 614 (Tex.Cr.App. 1982); *Jones v. State*, 479 S.W.2d 307, 311 (Tex. Cr.App.1972) (Roberts, J., concurring); *Logan v. State*, 455 S.W.2d 267 (Tex.Cr.App.1970).

McCormick and Ray, sec. 1324, *supra;* Ray, Texas Law of Evidence, 3d Ed., 2 Texas Practice, sec. 1491, p. 168. This represents the present and proper conception of character, which is now settled as it has recently been codified in Rules 404(c) and 405 of the Texas Rules of Criminal Evidence.[7] Historically, however, the meaning of character has been in a state of nebulous flux.

To aid our understanding and resolution of the question presented, a somewhat tedious exploration of the history of character evidence is necessitated. Character evidence has its roots in the earliest of common law and the evolution of differing methods of proving character has convoluted the meaning of the term itself. Originally in England, personal opinion testimony was an accepted and regularly used method of proving character. Wigmore, Secs. 1980–1982; 2 McCormick and Ray, Texas Practice, Evidence sec. 1432; 2 Weinstein's Evidence, p. 405–4 (1986). However, in 1865, in the case of *Regina v. Rowton*, 10 Cox Crim.Cas. 25 (Eng.1865), proof of character became limited to only reputation testimony, to the exclusion of opinion testimony. The Texas origin of this common law view traces back to the 1882 case of *Brownlee v. State*, 13 Tex. App. 255, 257 (1882). *Brownlee* relied on Wharton's 1880 text on Criminal Evidence and upon the foundation civil case on the question—*Boon v. Weathered*, 23 Tex. 675, 684, 686 (1859). Thus, at common law and for years to follow, opinion testimony was held inadmissible to prove character, leaving reputation testimony as the only acceptable method of proof. *See, Moncrief v. State*, 707 S.W.2d 630, 631 and 634–635, fn. 1 (Teague, J., dissenting) (Tex.Cr.App. 1986); *Brown v. State*, 605 S.W.2d 572, 574 (Tex.Cr.App.1980); *Wrenn v. State*, 597 S.W.2d 369, 372, fn. 1 (Tex.Cr.App.1980); *Ward v. State*, 591 S.W.2d 810, 818 (Tex. Cr.App.1980) (Opinion on State's Motion for Rehearing); *Smith v. State*, 414 S.W.2d 659, 661 (Tex.Cr.App.1967); *Watson v. State*, 156 Tex.Crim. 585, 244 S.W.2d 515, 516 (1951); *Rogers v. State*, 126 Tex.Crim. 39, 70 S.W.2d 188, 188–189 (1934); *Kirk v. State*, 118 Tex.Crim. 462, 39 S.W.2d 61, 61–62 (1931); *Trammell v. State*, 10 Tex. App. 467, 468 (1881).

From the rule that reputation testimony was the only proper method of proving character evolved the misconception that character was the linguistic equivalent of reputation. The two terms began being incorrectly used interchangedly as synonymous. In Wharton's chapter on relevancy, it is stated,

> Character, in the sense in which the term is used in jurisprudence, means the estimate attached to the individual by the community, not the real qualities of the individual as conceived by the witness. In other words, it is not what the individual in question really is, but what he is held to be by the society in which he moves. 'Character,' therefore, is to be regarded as convertible with 'reputation.' [footnote omitted]. A witness, therefore, who is called to speak to character,—unlike a master who is asked for the character of his servant,—cannot give the result of his own personal experience and observation, or express his own opinion, but in strict law he must confine himself to evidence of more general repute.

*Wharton's Criminal Evidence*, ch. II, sec. 58 (1884). Thus, character and reputation came to be viewed as one.

Legal scholars soon began to rebel against this view, acknowledging that character encompassed more than mere reputation. Thus, further evolution through time appears to have resulted in reputation evidence taking on a life of its own, separate and completely independent from character, leaving the term character to describe

---

7. Rule 404(c) states:
 *Character relevant to punishment.* In the penalty phase, evidence may be offered by an accused or by the prosecution as to the prior criminal record of the accused. *Other evidence of his character* may be offered by an accused or by the prosecution.　　·

Rule 405 states in pertinent part:
 *Methods of Proving Character*
 (a) *Reputation or Opinion.* In all cases in which evidence of character ... is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion.

the other methods of proof, e.g., testimony concerning opinion and specific instances of conduct. At that point in time, opinion testimony apparently began to be seen as the most acceptable type of character evidence, since specific instances of conduct were uniformly viewed as inherently prejudicial and reputation had become something completely independent from character. Thus, the meaning of character became even further convoluted as it began to be used by some writers to refer only to opinion testimony. With the passage of time, these varying misperceptions of character evidence were adopted and continually adhered to by different legal writers. Thus, it comes as no surprise that even today we have judicial craftsmen voicing varying anomalous views of character.

Regardless of the historically ubiquitous mislabeling of character, reputation testimony was, for many years, unquestionably the only approved method of proving character. However, various evidence experts such as Ladd, Wigmore, McCormick and Carlson, constantly and fervently advocated the admissibility of opinion testimony as a much more reliable method of proving character than the inherently unreliable hearsay-based reputation method of proof. Ladd, *Techniques and Theory of Character Testimony*, 24 Iowa L.Rev. 498, 513 (1929); 7 Wigmore, Evidence, sec. 1986, p. 166 (1940). By the early 1960's, statutory modification prevailed and in the codification and amendments of the various evidentiary codes throughout the federal, state, criminal and civil levels the voices of these critics were being heard and adopted. *See*, Federal Rules of Evidence, R. 405; Model Code of Evidence, R. 305; Uniform Rule of Evidence, R. 48; Texas Rules of Evidence, R. 404–405; 20 Hous.L.Rev. 1, 187–203 (1983); Ladd, *Some Observations on Credibility Impeachment of Witnesses*, 52 Cornell Law Quarterly 242 (1967); Ladd, *Witnesses*, 10 Rutgers Law Rev. 523 (1956); Ladd, *Some Highlights of the New Federal Rules of Evidence*, 1 Fla.Law Rev. 1, 27 (1973); 2 Weinstein's Evidence 405–1 (1986). It is within the early phases of this

aura of evidentiary modernization that Texas drafted its new Code of Criminal Procedure.

The 1965 legislature, in drafting the new Code, created a bifurcated guilt-sentencing procedure which, at that time, was considered to be one of "the most controversial" changes in the law. Art. 37.07, *supra;* Special Commentary to Art. 37.07, V.A.C.C.P.1966). In the same article in which this novel sentencing trial was created, our presently problematical section 3(a) [8] was also created to address the evidence admissible at this distinct punishment phase. Through their enactment of Sec. 3(a), the legislature made clear their contemplation of the fact that the invention of a bifurcated trial implicated new evidentiary questions specific to the punishment phase. Certain evidence that would normally be highly prejudicial and minimally probative at the guilt stage, could result in just the reverse prejudicial/probative analysis at the punishment phase, since guilt or innocence was no longer at issue.

Legislative history reveals that two proposed forms of section 3(a) were rejected prior to its adoption. The original Senate bill version stated, "[n]othing herein contained shall be construed to change or affect the existing law as to the admissibility of evidence pertaining to the character, reputation or previous conviction, if any." This version was rejected as well as the State Bar Committee's proposal which stated that, at punishment, evidence of the defendant's criminal record, reputation, character and "such other competent evidence as in the discretion of the trial judge may be considered helpful in assessing punishment." Instead, the legislature codified a rule intermediate to these two, allowing evidence of prior criminal record, "reputation *and* character." Art. 37.07, Sec. 3(a), *supra.*

 We review all of this common law and legislative history to enable us to resolve the question of whether, under 37.07, opinion testimony is admissible as a form of character evidence. We think that it is. Two issues are critical to our conclusion—

---

**8.** Originally Sec. 2(a), but subsequently renumbered.

the legislative creation of a separate punishment hearing and the wording of the statute itself.

Prior to the creation of the 1965 Code, it had unquestionably been the general rule that reputation testimony was the only permissible method of proving character. However, this rule was based upon an entire body of caselaw which was adopted from civil law and concerned relevancy determinations involving guilt-innocence. The 1965 enactment of a bifurcated trial procedure, where an entirely separate punishment hearing was created, rendered the historical exclusion of opinion testimony at guilt-innocence subject to new scrutiny. The legislature for the first time had occasion to determine the admissibility of evidence only as to punishment. Further, this determination was made during a time when evidentiary codes were being modernized and the advocates of opinion testimony were beginning to be heard. Opinion testimony, as proof of character, was being accepted and statutorily authorized as admissible even as relevant to some guilt-innocence issues. These factors surely had a bearing on the drafter's decisions.

As to the language of the statute itself, it reads: "evidence may be offered ... as to the [defendant's] prior criminal record ... general reputation. and his character." Art. 37.07, Sec. 3(a), *supra.* At the outset, it appears that the drafters obviously fell prey to the linguistic problems discussed earlier. The imprecise and redundant use of the term reputation as a separate animal from character renders confusion. In truth, reputation is no more than a method of proving character—a type of character evidence.

Linguistic problems aside, the very language of the statute evidences the draftor's intent to make opinion testimony admissible. Where the statute reads, *"and* his character," use of the word *and* clearly denotes an intent to include some other method of proving character *in addition to* reputation. Opinion testimony is clearly a method of proving character, and its admissibility is nowhere specifically precluded.

Had the statute read to admit "character evidence only in the form of reputation testimony" or solely "reputation testimony" or even only "character evidence," then one could make a plausible argument that opinion testimony was intended to be excluded based on the common law rule or the historical misperceptions discussed earlier. However, from the face of the statute it is clear that the legislature intended to admit character evidence which was thought to be something in addition to reputation. We find that the legislature's use of the term character, in addition to the term reputation and joined by the conjunctive term "and", evidences their intent to abrogate the old rule that reputation was the only approved method of proving character and admit opinion testimony.

Our conclusion is bolstered by what evidently has been regular trial court practice under 37.07, 3(a), *supra.* Opinion testimony is obviously routinely admitted at punishment, ergo the creation of the embattled distinction between whether a witness is an opinion or a reputation witness. The importance of this distinction revolves around a determination of whether impeachment by "have you heard" questions is allowed. *See, Rutledge v. State,* 749 S.W.2d 50 (Tex. Cr.App.1988) and cases cited therein. Reputation witnesses can be impeached with these questions whereas opinion witnesses cannot. Such a distinction simply could not have arisen if opinion testimony was always precluded from trial.

We now hold that under 37.07, 3(a), opinion testimony is admissible at the punishment phase. Thus, in the instant case, the trial court's blanket exclusion of opinion testimony was erroneous. However, a finding of error begins, not ends our inquiry. We now determine whether the error requires reversal.

■ Our current and relatively new standard to judge reversible error is embodied in Rule 81(b)(2) of the Texas Rules of Appellate Procedure which states:

If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appel-

late court determines beyond a reasonable doubt that the error made no contribution to the conviction or punishment. Although this is an appropriately high requirement for a finding of harmless error, the facts of the instant case meet this standard.

The trial court attempted to exclude the opinion testimony of eleven witnesses. Appellant perfected a bill of exception properly preserving the excluded testimony of six of these witnesses. As to the remaining five witnesses, who were not included in the bill of exception, we do not know what their excluded testimony would have been or even if they were prevented from testifying to anything, and we will not speculate as to such. *Baldwin v. State*, 538 S.W.2d 109, 113 (Tex.Cr.App.1976).

Of the six witnesses whose excluded testimony is preserved, only five of these were actually precluded from giving their opinion. One witness testified to his opinion in spite of the court's ruling and admonition. The five witnesses who did not testify to their opinion, did testify favorably concerning the defendant's reputation for truth and veracity and for being peaceable and law abiding, with the overall evidentiary effect of such testimony being virtually the same as opinion testimony.

Concerning the offense committed, appellant, an attorney, pled guilty to stealing over $10,000 from his client, Brenda Hummel. Appellant represented Hummel in a *wrongful death suit* against the U.S. Government which culminated in appellant's negotiation of a settlement for $330,000. For his services appellant received a $66,000 fee. Upon appellant's advice Hummel decided to allow appellant to place $30,000 of the settlement in an educational trust fund for her children which was to mature when they reached 18 years of age. Appellant took the $30,000 and, instead of investing it, he placed it in his own bank account. On the day of this deposit and approximately one week prior thereto, appellant had written two hot checks on this account in a sum totalling $10,000.

When Hummel's first child reached 18, she attempted to contact appellant. Initially, appellant avoided her and refused to return her calls. When he was finally forced to speak to her, appellant lied and stated that the money was in a C.D. drawing interest and would not mature until a later date. After Hummel's continued persistence, appellant admitted that he had not only failed to invest the money but that he had already spent it. Appellant then staged an elaborate scheme to feign a mysterious disappearance and fled town only to decide later to return.

After his return, appellant met with Hummel and proposed a plan for the repayment of the money. Following the meeting appellant appeared arrogant and bragged to another attorney, "they fell for it." The seriousness of appellant's criminal conduct was best summarized by his own attorney as a "flagrant violation" of "[o]ne of the most sacred trust[s] that exists at least in the commercial world between an attorney and his client."

The punishment range for this second degree felony was probation or 2 to 20 years. Thus, the eight year sentence, while not the minimal punishment possible, was not the maximum that could have been assessed. Based on all the testimony, we find beyond a reasonable doubt that the court's erroneous exclusion of the opinion testimony of five witnesses made no contribution to the punishment assessed. For an analogous harm analysis *see, Rose v. State*, 752 S.W.2d 529, 552–554 (Tex.Cr.App.1987) (Opinion on Rehearing).

Although we disagree with the portion of the Court of Appeals' opinion addressing admissibility of evidence at punishment, the ultimate conclusion reached is correct. Consequently, the judgment of the Court of Appeals is affirmed.

McCORMICK, P.J., not participating.

MILLER, CAMPBELL and DUNCAN, JJ., concur in the result.

TEAGUE, J., dissents. See the dissenting opinion Judge Teague filed in *Avan King v. State of Texas*, 773 S.W.2d 302 (Tex.Cr.App.1989). Also see Judge Teague's concurring opinion in *Gary Lynn Murphy v. State of Texas*, 777 S.W.2d 44 (Tex.Cr.App.1989).

CLINTON, Judge, concurring and dissenting.

I agree with the Judge White's plurality opinion inasmuch as it concludes that by "character" evidence, Article 37.07, § 3(a), V.A.C.C.P., the Legislature authorized use of opinion testimony as to character. I am frankly puzzled, however, that in holding evidence of specific conduct inadmissible, in accordance with the plurality opinion handed down this day in *Murphy v. State,* 777 S.W.2d 44 (Tex.Cr.App.1989), he chooses to characterize that opinion as having "overruled a substantial amount of caselaw...." at 839. Though a handful of cases were "disapproved" in *Murphy,* by and large our opinion on rehearing was an attempt to harmonize prior caselaw insofar as possible.

Having concluded error was committed in this cause, the plurality opinion proceeds to find it harmless, relying primarily on the Court's opinion on rehearing in *Rose v. State,* 752 S.W.2d 529 (Tex.Cr.App.1987). The Court would do better, in my opinion, to await disposition of certain petitions recently granted to review various courts of appeals' application of Tex.R.App.Pro., Rule 81(b)(2) analysis to *Rose* error, before undertaking to rely on *Rose* here. At any rate, this Court should not endeavor to conduct a harm analysis in the first instance, but should remand to the court of appeals "for it to exercise the unique power and authority retained by that court under Article V, §§ 5 and 6 and other provision cited" at *Juarez v. State,* 758 S.W.2d 772, at 783-85 (Tex.Cr.App.1988) (Clinton, J., dissenting). See also *Hammett v. State,* 713 S.W.2d 102, at 107 (Tex.Cr.App. 1986).

Agreeing with the plurality in its resolution of the substantive question of law we granted this petition to decide, I nevertheless dissent to its conclusion the error was harmless in this cause.