

# IN THE
# TENTH COURT OF APPEALS

### No. 10-14-00354-CR

**JULIAN CHRISTOPHER FERGUSON,**

                                          **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                          **Appellee**

---

**From the 361st District Court**
**Brazos County, Texas**
**Trial Court No. 11-02212-CRF-361**

---

## MEMORANDUM OPINION

---

In two issues, appellant, Julian Christopher Ferguson, challenges the trial court's denial of his motions to suppress evidence. Specifically, Ferguson contends that the search of his vehicle was the direct fruit of an illegally-installed Global Positioning System ("GPS") tracking device and that the search-warrant affidavit did not establish probable cause for stopping and searching his vehicle when the vehicle was not on the curtilage of his residence. We affirm.

# I.    BACKGROUND

Ferguson was charged by indictment with unlawful possession of a controlled substance—marijuana—in an amount greater than five pounds but less than fifty pounds. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.121(a), (b)(4) (West 2010). Prior to trial, Ferguson filed two separate motions to suppress evidence obtained as a result of a GPS-tracking device that was affixed to his pickup. The trial court denied both motions.

Thereafter, Ferguson pleaded "guilty" to the charged offense, and the jury sentenced him to eight years' confinement in the Institutional Division of the Texas Department of Criminal Justice with a $10,000 fine and a recommendation for community supervision. The trial court accepted the jury's verdict, imposed the eight-year sentence and fine, suspended the sentence and fine, and placed Ferguson on community supervision for five years. The trial court also certified Ferguson's right of appeal, and this appeal followed.

# II.    ANALYSIS

In his first issue, Ferguson contends that the trial court abused its discretion in denying his motions to suppress because the search of his vehicle was the direct fruit of an illegally-installed GPS tracking device. We disagree.

Article 18.21 of the Texas Code of Criminal Procedure empowers a district judge to issue an order authorizing the surreptitious installation and use of a mobile tracking device for the purpose of tracking the movement of a vehicle. TEX. CODE CRIM. PROC.

ANN. art. 18.21, § 14(a)(1) (West Supp. 2016).  An order authorizing the use of a mobile tracking device may be issued only on the application of an authorized peace officer.  *Id.* art. 18.21, § 14(c).  That application must be written, signed, and sworn to before a district judge, and it must contain a statement of facts and circumstances that provide the applicant with "reasonable suspicion" to believe that (1) criminal activity has been, is, or will be committed; and (2) the installation and use of the device is likely to produce information that is material to an ongoing criminal investigation of criminal activity.  *Id.* art. 18.21, § 14(c)(5).

In the instant case, law enforcement asserted the following in their article 18.21 application for the mobile tracking device:

> Affiant [Investigator Andy Murph of the College Station Police Department] recently met with a Confidential Informant (CI) regarding trafficking of large amounts of high grade marijuana within Brazos County, Texas.  The CI has shown the ability to recognize marijuana on sight.  The CI has demonstrated knowledge of the drug culture and knowledge of how illicit drugs are bought and sold.  The CI wished to provide information on a person known to the CI as "Julian."  The CI said that Julian is a large scale supplier of felony amounts of hydroponic marijuana to other dealers in Brazos County, Texas, area.  The CI said that the CI had personally obtained hydroponic marijuana from Julian within the month preceding the presentation of this affidavit, and that the marijuana consisted of a wholesale, felony amount.  The CI admitted that the CI had sold that marijuana for Julian.
>
> The CI described Julian as a white male of about 20 years of age, having shaggy shoulder length brown hair, and about 5'10" and 150 lbs. The CI said that Julian drives a single cab, 2-door, Ford F150 pickup that is silver in color.  The CI said that Julian had delivered the marijuana to the CI in this vehicle.  The CI further said that Julian was believed to live in the area of Holleman Dr. and Anderson Dr., College Station, Brazos County,

Texas, but the CI was not certain of the exact address. Finally, the CI further provided Julian's cellular telephone numbers . . . .

The CI allowed your Affiant to look at text messages on the CI's cellular telephone, in which the CI and a person listed as "Julian," with the above listed cellular telephone numbers, held a texting conversation consisting of Julian and the CI making arrangements for the delivery of a felony amount of marijuana from Julian to the CI. This conversation occurred within the month preceding the presentation of this affidavit.

Affiant then checked College Station Police Department records and discovered that cellular telephone number . . . is shown to belong to Julian Christopher Ferguson, white male, date of birth 01/28/91, of Brazos County, Texas. Further checking on this name revealed that Julian Ferguson resides at 1502 Wolf Run, College Station, Brazos County, Texas, which is a short distance from the area of Holleman Dr. and Anderson Dr., College Station, Texas. Affiant found that the description provided by the CI for "Julian" matches the description of Julian Christopher Ferguson.

Affiant conducted surveillance at 1502 Wolf Run, College Station, Brazos County, Texas, and observed a silver 2000 Ford F150 pickup, bearing Texas license plate 22KRP5, parked in the carport of this residence. A check of the registration revealed that it is registered to a person having the same last name as Julian Ferguson. Affiant saw that this vehicle exactly matched the description given by the CI.

There is reasonable suspicion to believe that the vehicle described in this Affidavit may be involved in current and future criminal activity, and the installation of a Mobile Tracking Device within this vehicle is reasonably likely to yield information relevant to this investigation as well as future criminal activity.

On February 1, 2011, the 272nd District Court granted the application for the mobile tracking device.

Thereafter, law enforcement surreptitiously attached a GPS-tracking device to Ferguson's pickup. As described in the subsequently-filed search-warrant affidavit, law enforcement discovered the following as a result of the usage of the GPS-tracking device:

> Affiant began to conduct surveillance on Said Suspected Party's vehicle to try to determine where and when Said Suspected Party would travel out of town to any source location for bulk hydroponic marijuana. On February 9th, 2011, surveillance indicated that during the afternoon of that date, at about 1300 hrs., Said Suspected Party left College Station, Texas, and traveled to Katy, Texas. Surveillance indicated that Said Suspected Party stopped at a house in Katy, Texas, for approximately one hour, before beginning a return trip to College Station, Texas. Said Suspected Party took a different route on the return trip, arriving back in College Station, Texas, at about 1850 hrs. Surveillance then revealed that Said Suspected Party made short duration stops at three separate apartment complexes in College Station, Texas, prior to returning to his home at Said Suspected Place.
>
> Affiant know[s] from training and experience that this type of trip and behavior is consistent with a drug dealer picking up a large, felony amount of marijuana. Affiant has spoken with numerous informants in the past who have told your Affiant that the Katy, Texas, area is a source location for dealer amounts of hydroponic marijuana. Affiant saw that the time spent driving and at the residence in Katy, Texas, was consistent with someone traveling there to pick up marijuana. Affiant further knows that drug dealers will often take different routes when returning from picking up their illicit products, so as to avoid detection from law enforcement. Finally, Affiant knows that the three stops made at apartment complexes in College Station, Texas, upon the return of Said Suspected Party, were consistent with a drug dealer dropping off his product to waiting customers.

Subsequently, Murph, along with other officers, conducted a "trash pull" at Ferguson's residence. Law enforcement discovered three garbage bags contained inside a garbage can that was placed on the roadside in front of Ferguson's residence. The first

garbage bag searched did not yield any contraband. However, both the second and third bags did. Specifically, inside the second garbage bag was plastic sandwich baggies with small amounts of green particles that were consistent with marijuana. Officers also found a pizza receipt with Ferguson's name, phone number, and address. Additionally, a Swisher Sweets cigar box was also found inside the second garbage bag. Murph knew from his experience and training that Swisher Sweets were commonly used to smoke marijuana by emptying the tobacco filler and refilling the cigar with marijuana for smoking. Inside the third garbage bag was a plastic sandwich baggie that was tied at the top and also contained green particles consistent with marijuana. Murph recognized that marijuana is commonly packaged for distribution in a plastic sandwich baggie tied at the top. Subsequent testing revealed that the green particles contained in the plastic sandwich baggies were indeed marijuana.

Based on the aforementioned information obtained through their investigation, law enforcement filed an affidavit on February 20, 2011, seeking a warrant to search, among other things, Ferguson's 2000 Ford F150 pickup bearing Texas license plate 22KRP5. The affidavit in support of the search warrant mirrored the application for the mobile tracking device and included extra paragraphs describing the "trash pull" and the information obtained as a result of the GPS-tracking device. The Brazos County Court at Law Number 2 issued a warrant authorizing the search of Ferguson's residence and vehicles, including the pickup. Law enforcement eventually stopped Ferguson while he

was driving his pickup. Large quantities of marijuana, among other things, were found inside the pickup.

On appeal, Ferguson argues that the trial court abused its discretion in denying his motions to suppress evidence obtained as a result of the GPS-tracking device. In support of this contention, Ferguson relies on the United States Supreme Court's decision in *Jones*. *See United States v. Jones*, 565 U.S. 400, 404-05, 132 S. Ct. 945, 949, 181 L. Ed. 2d 911 (2012) (holding that the installation of a GPS tracking device on a vehicle to monitor a vehicle's movements constitutes a search under the Fourth Amendment).

> Appellate courts review a trial court's ruling on a motion to suppress by using a bifurcated standard, giving almost total deference to the historical facts found by the trial court and analyzing de novo the trial court's application of the law. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). Ordinarily, the preference for searches based upon warrants requires reviewing courts to give "great deference" to a magistrate's determination of probable cause. *Ornelas v. United States*, 517 U.S. 690, 699, 116 S. Ct. 1657, 134 L. Ed. 2d 911 (1996); *Illinois v. Gates*, 462 U.S. 213, 236, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983); *see also Swearingen v. State*, 143 S.W.3d 808, 811 (Tex. Crim. App. 2004). "[I]n a doubtful or marginal case a search under a warrant may be sustainable where without one it would fall." *United States v. Ventresca*, 380 U.S. 102, 106, 85 S. Ct. 741, 13 L. Ed. 2d 684 (1965); *see also Jones v. State*, 364 S.W.3d 854, 857 (Tex. Crim. App. 2012) ("'[T]he magistrate's decision should carry the day in doubtful or marginal cases, even if the reviewing court might reach a different result upon de novo review.'") (quoting *Flores v. State*, 319 S.W.3d 697, 702 (Tex. Crim. App. 2010)).
>
> But that deference to the magistrate is not called for when the question becomes whether an affidavit, stricken of its tainted information, meets the standard of probable cause. *McClintock v. State*, 444 S.W.3d 15, 19 (Tex. Crim. App. 2014). This is, in part, because a "magistrate's judgment would have been based on facts that are no longer on the table," and there is "no way of telling the extent to which the excised portion influenced the

magistrate judge's determination." *United States v. Kelley*, 482 F.3d 1047, 1051 (9th Cir. 2007). More importantly, it reinforces the principle that "[a] search warrant may not be procured lawfully by the use of illegally obtained information." *Brown v. State*, 605 S.W.2d 572, 577 (Tex. Crim. App. 1980), *overruled on other grounds by Hedicke v. State*, 779 S.W.2d 837 (Tex. Crim. App. 1989). "When part of a warrant affidavit must be excluded from the calculus, . . . then it is up to the reviewing courts to determine whether 'the independently acquired and lawful information stated in the affidavit nevertheless clearly established probable cause.'" *McClintock*, 444 S.W.3d at 19. A search warrant based in part on tainted information is nonetheless valid if it clearly could have been issued on the basis of the untainted information in the affidavit. *Brown*, 605 S.W.2d at 577.

Yet, reviewing courts are still required to read the purged affidavit in accordance with *Illinois v. Gates*. Courts should interpret the affidavit in a commonsensical and realistic manner, drawing reasonable inferences from the information. *Rodriguez v. State*, 232 S.W.3d 55, 61 (Tex. Crim. App. 2007). Indeed, an appellate court should not invalidate a warrant by interpreting the affidavit in a hyper-technical manner. *Bonds v. State*, 403 S.W.3d 867, 873 (Tex. Crim. App. 2013). Probable cause exists if, under the totality of the circumstances, there is fair probability that contraband or evidence of a crime will be found at a specified location. *State v. McLain*, 337 S.W.3d 268, 272 (Tex. Crim. App. 2011). It is a flexible, non-demanding standard. *Id.*

*State v. Cuong Phu Lee*, 463 S.W.3d 872, 876-78 (Tex. Crim. App. 2015).

Here, law enforcement had substantial information about Ferguson's drug trafficking business that was corroborated by Murph. Specifically, as noted above, the confidential informant had personally obtained hydroponic marijuana from Ferguson within the month preceding the application for the GPS-tracking device. Moreover, the confidential informant also sold marijuana for Ferguson and noticed that Ferguson delivered marijuana to customers while using the silver Ford F150 pickup. Additionally, the search-warrant affidavit stated that the confidential informant and Ferguson texted

about a deal whereby Ferguson would deliver a felony amount of marijuana to the confidential informant. The confidential informant also provided accurate descriptions of Ferguson's appearance, residence, and vehicle. Furthermore, as mentioned in the search-warrant affidavit, law enforcement conducted a "trash pull" of Ferguson's trash can, which yielded two garbage bags that contained marijuana, marijuana paraphernalia, and a receipt identifying the trash as Ferguson's.

Based on the totality of the circumstances, we conclude that the independent and lawfully-acquired information in the search warrant affidavit—when viewed as a whole and in a common-sense manner—established a fair probability that contraband or evidence of a crime would be found in Ferguson's residence and pickup. *See id.* at 877-78; *see also McLain*, 337 S.W.3d at 272. In other words, even assuming the information obtained from the GPS-tracking device was improper and not subject for consideration, we conclude that the affidavit in support of the search warrant, stricken of its alleged tainted information, meets the standard of probable cause.

Nevertheless, Ferguson argues on appeal that we should not consider the information obtained from the confidential informant because the information was stale. Ferguson also asserts that the information obtained from the "trash pull" cannot be considered because it was tainted by the illegal GPS-tracking device. We reject both contentions.

First, to justify a magistrate's finding that an affidavit established probable cause to issue a search warrant, the facts set out in the affidavit must not become stale when the warrant is issued. *Ex parte Jones*, 473 S.W.3d 850, 856 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd). Probable cause ceases to exist when, at the time the warrant is issued, it would be unreasonable to presume the items remain at the suspected place. *Id.* However, the amount of delay that will make information stale for purposes of a search warrant depends on the particular facts of the case, including the nature of the criminal activity and the type of evidence sought. *Lockett v. State*, 879 S.W.2d 184, 189 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd). "'Mechanical count of days is of little assistance in this determination'" but rather common sense and reasonableness must prevail, with considerable deference given to the magistrate based on the facts before him, absent arbitrariness. *Id.* (quoting *Ellis v. State*, 722 S.W.2d 192, 196-97 (Tex. App.—Dallas 1986, no pet.)). In addition, when the affidavit properly recites facts indicating activity of a protracted and continuous nature—a course of conduct—the passage of time becomes less significant. *Ex parte Jones*, 473 S.W.3d at 856; *see Lockett*, 879 S.W.2d at 189. Therefore, the proper method to determine whether the facts supporting a search warrant have become stale is to examine, in light of the type of criminal activity involved, the time elapsing between the occurrence of events set out in the affidavit and the time the search warrant was issued. *Ex parte Jones*, 473 S.W.3d at 856.

In this case, the affidavit in support of the search warrant indicates that Murph met with the confidential informant in January 2011, and that the confidential informant had personally obtained hydroponic marijuana from Ferguson within the month preceding the presentation of the affidavit. Murph swore to and signed the affidavit on February 20, 2011; thus, the actions in support of the search warrant transpired sometime in January 2011, approximately seven weeks prior to the issuance of the search warrant. Ferguson contends that the amount of time that elapsed between the events in question and the issuance of the search warrant was too long and, thus, the information relied upon for the search warrant was stale.

However, as noted earlier, the affidavit in support of the search warrant states that Ferguson is "a large scale supplier of felony amounts of hydroponic marijuana to other dealers in the Brazos County, Texas, area." Further, the confidential informant admitted to selling marijuana for Ferguson and personally buying marijuana from Ferguson in the previous month and that the two had texted to make arrangements for an additional delivery of a felony amount of marijuana within the month preceding the presentation of the affidavit. In other words, the search-warrant affidavit established that Ferguson's drug trafficking enterprise was an ongoing criminal activity that defeats a claim of staleness. *See Cuong Phu Le*, 463 S.W.3d at 880 ("As this Court observed in *Jones v. State*, 'evidence of ongoing criminal activity will generally defeat a claim of staleness.'"

(quoting *Jones v. State*, 364 S.W.3d 854, 861 (Tex. Crim. App. 2012)); *see also Ex parte Jones*, 473 S.W.3d at 856; *Lockett*, 879 S.W.2d at 189.

And with regard to Ferguson's complaints about the "trash pull," we note that:

> The United States Supreme Court has held that the Fourth Amendment does not prohibit the warrantless search and seizure of garbage left for collection outside the curtilage of the home. *California v. Greenwood*, 486 U.S. 35, 41, 100 L. Ed. 2d 30, 108 S. Ct. 1625 (1988). "Curtilage is the area to which extends the intimate activity associated with the sanctity of a man's home and the privacies of life." *Oliver v. United States*, 466 U.S. 170, 180, 80 L. Ed. 214, 104 S. Ct. 1735 (1984). In *Greenwood*, the garbage was placed in its normal location for garbage pickup, next to the curb on the street. In upholding the search and seizure of Greenwood's garbage, the Court held that any expectation of privacy in the garbage was not objectively reasonable because of the extent to which the garbage was exposed to the public. *Greenwood*, 486 U.S. at 41.

*Nilson v. State*, 106 S.W.3d 869, 872-73 (Tex. App.—Dallas 2003, no pet.) (noting also that "[o]nce a person places trash bags containing contraband next to a public thoroughfare for collection, he exposes them to the public-at-large, including the police" (citing *United States v. Shanks*, 97 F.3d 977, 980 (7th Cir. 1996)). Thus, we cannot say that the "trash pull" was tainted because Ferguson did not have a reasonable expectation of privacy in the trash he left in the garbage can at the curb of his residence, and because the information obtained from the confidential informant provided an independent justification for the search of the garbage can. *See Wehrenberg v. State*, 416 S.W.3d 458, 465 n.4 (Tex. Crim. App. 2013) ("'Under the independent source doctrine, the exclusionary rule is inapplicable where the evidence was acquired through a source independent of the tainted search.'" (quoting *United States v. Brooks*, 715 F.3d 1069, 1075 (8th Cir. 2013))).

Therefore, given the above, we cannot say that the information obtained from the "trash pull" should have been suppressed by the trial court.

And because we conclude that the information contained in the affidavit supporting the search warrant absent the information related to the GPS –tracking device was sufficient to establish probable cause to justify the issuance of the search warrant, we cannot say that the trial court abused its discretion in denying Ferguson's motions to suppress. *See Cuong Phu Lee*, 463 S.W.3d at 876; *see also Guzman*, 955 S.W.2d at 89. Accordingly, we overrule his first issue.

In his second issue, Ferguson contends that the search-warrant affidavit gave no probable cause for stopping or searching his pickup when it was not on the curtilage of his residence. We do not agree with Ferguson's interpretation of the search warrant. In particular, the warrant indicated the following were the subjects of the search:

> Said Suspected Place is a two-story town-home style residential structure having the physical address of 1502 Wolf Run, College Station, Brazos County, Texas. Said Suspected Place is the second residential structure on the southern side of Wolf Run, east of the intersection of the northern end of Wolf Run and Anderson St., College Station, Brazos County, Texas. Said Suspected Place is constructed of tan brick and brown wood siding. The front door of Said Suspected Place faces in a northerly direction and had a stained wood appearance. The numbers "1502" are displayed on a brick column to the left of the front entryway of Said Suspected Place. Said Suspected Place is to include all vehicles in the control of Said Suspected Party, including but not limited to a 2000 Ford F150 pickup bearing Texas license plate 22KRP5.
>
> SAID SUSPECTED PLACE IS IN CHARGE OF AND CONTROLLED BY EACH OF THE FOLLOWING NAMED PARTIES

(HEREINAFTER CALLED "SUSPECTED PARTY" WHETHER ONE OR MORE) TO-WIT:

Julian Christopher Ferguson, w/m, DOB 01/28/91 (Said Suspected Party)

. . . .

Based on Affiant's experience in conducting narcotic investigations, he found it is common for individuals to conceal the illegal substances in locations outside of the residence, such as garages, outbuildings, boxes, vehicles parked within the curtilage so as to avoid detection by law enforcement. The Affiant wishes to include these locations in the search warrant.

A fair reading of the search warrant indicates that the search of Ferguson's pickup was not limited to only when the vehicle was parked within the curtilage of his residence. In fact, the pickup and other vehicles possibly owned by Ferguson were described as "Said Suspected Place" and subject to search without any limitation to the curtilage. Therefore, because the search warrant specifically authorized the search of Ferguson's pickup without limitation to the curtilage, and because we have previously concluded that the affidavit in support of the search warrant established probable cause to search Ferguson's pickup, we overrule Ferguson's second issue.

### III. CONCLUSION

Having overruled both of Ferguson's issues on appeal, we affirm the judgment of the trial court.

                                    AL SCOGGINS
                                    Justice

Before Chief Justice Gray,
          Justice Davis, and
          Justice Scoggins
Affirmed
Opinion delivered and filed November 30, 2016
Do not publish
[CR25]

