IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-1486-06






CALVIN JOSEPH SMITH, Appellant



v.



THE STATE OF TEXAS


 




ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE FOURTEENTH COURT OF APPEALS


WALKER COUNTY





 Price, J., delivered the opinion of the Court in which Meyers, Womack, Keasler,
Hervey, Holcomb, and Cochran, JJ., joined. Keller, P.J., filed a dissenting opinion. 
Johnson, J., filed a dissenting opinion.


O P I N I O N 



 The appellant was indicted for the capital murder of a child younger than six years of
age for the death of his daughter, who was five months old when she died. He pled guilty in an
open plea proceeding to the reduced charge of reckless injury to a child, a second degree
felony, and was assessed the maximum punishment of twenty years' confinement in the
penitentiary and a $10,000 fine. On appeal, the Fourteenth Court of Appeals reversed the
judgment and remanded the cause to the trial court for re-assessment of punishment. (1)

 The court of appeals held that the trial court erred in considering extraneous misconduct
evidence in making its normative decision of the appropriate punishment to assess within the
applicable range because the State failed to establish that the appellant committed that
misconduct to a level of confidence beyond a reasonable doubt, as required by Article 37.07,
Section 3(a)(1) of the Texas Code of Criminal Procedure. (2) The extraneous misconduct was
not developed in testimony at the punishment hearing, however, but was contained in a pre-sentence investigation ("PSI") report which the trial court had ordered to be prepared pursuant
to Article 42.12, Section 9 (a) of the Code of Criminal Procedure. (3) Under Article 37.07,
Section 3(d) of the Code, a trial court is expressly authorized to "consider" a PSI when
assessing punishment. (4) In its petition for discretionary review, the State Prosecuting Attorney
(SPA) now contends that a trial court may consider extraneous misconduct evidence, even if
it does not meet the threshold "beyond a reasonable doubt" standard for admissibility under
Article 37.07, Section 3(a)(1), if it is contained in a PSI that the trial court has ordered
pursuant to Section 3(d). We granted the State's petition to examine this contention, and also
to address, if necessary, the SPA's alternative contention that in any event the court of appeals
erred to find that the extraneous misconduct was not established beyond a reasonable doubt. (5)

FACTS AND PROCEDURAL POSTURE

Guilty Plea Proceedings

 The appellant entered his guilty plea on April 29, 2004. The trial court granted the
State's motion to reduce the charge from a capital offense and admonished the appellant. In
support of the plea, the prosecutor offered a written stipulation of evidence and waiver of
rights that the appellant signed. In that stipulation the appellant admitted that on November 20,
2000, he had "recklessly cause[d] serious bodily injury to Kiana Smith, a child 14 years of age
or younger, by striking her in the abdomen." This is the only information the trial court had
before it when it accepted the appellant's guilty plea. The trial court ordered a pre-sentence
investigation, specifically requesting that the PSI contain "whatever statement [the appellant]
made, whatever findings we have from medical doctors and things of that nature."

Punishment Proceedings

 A hearing on punishment commenced on September 8, 2004. The only evidence that
the State offered was the PSI. The appellant objected that the PSI contained references to
injuries that Kiana had sustained in the several weeks before the abdominal injury that killed
her and that there was no proof beyond a reasonable doubt that the appellant inflicted those
injuries. The trial court took this objection under advisement, declined to admit the PSI into
evidence at this time, and proceeded to hear the appellant's witnesses. (6) The last witness the
appellant called was Sheila Hugo, the community supervision officer who prepared the PSI. 
She testified that the appellant had no criminal history (thus establishing his eligibility for
community supervision) and no history of drug or alcohol abuse. On cross-examination she
agreed that, despite these factors favoring the appellant, in the PSI she had recommended that
the appellant serve "pen time."

 The trial judge then questioned Hugo on the record. According to medical records that
Hugo had apparently had with her, Kiana had last been to see the pediatrician on October 24,
2000, approximately a month before her death. At that time Kiana apparently suffered no
major health problems. Hugo also testified that the appellant was one of three caretakers for
Kiana, the other two being Kiana's mother and her maternal grandmother. (7) But Hugo was
unable to tell the judge specifically whether, at any time between Kiana's last visit to the
doctor on October 24th and the date that the appellant had brought her to the hospital with her
fatal injury, on November 19th, the appellant had had exclusive possession of her. She was only
able to establish that Kiana was in the appellant's care between 10:00 a.m. and 6 p.m. on
November 19th, at which time he had brought her to the hospital. With this, the appellant rested
his case at the punishment hearing.

 At this juncture, the trial court complained, "I don't know what he's pleading guilty to,
what act, what reckless act he is really pleading guilty to." The PSI (which had still not been
admitted into evidence) mentioned other injuries that Kiana had suffered in the weeks before
her death, including rib fractures that had occurred ten to fourteen days before she died, and
abdominal bruising that was two to three days old. Also, according to the PSI, both her legs
were also fractured, although these injuries were also already in the healing stage by the time
of her death. The prosecutor assured the trial court that these were not the injuries that were
the subject of the indictment that the appellant had pled guilty to.

 The PSI also mentioned a fatal abdominal injury that "was believed to have been
sustained during a range of six to twelve hours prior to arrival at the hospital; however, the
range could have been much longer or shorter, depending on the victim." This was the injury
that the appellant had plead guilty to, the prosecutor explained. The appellant then reiterated
his objection to the older injuries, arguing that "those are extraneous and the Court to even
consider them in punishing has to believe beyond a reasonable doubt that they were done by
[the appellant] and there is no evidence whatsoever before the Court on that." The prosecutor
responded:

 I think that the Court needs to concentrate on the blunt force trauma
suffered by the child and the resultant internal bleeding that he plead guilty to,
recklessly causing that resulted in her death.


 I can't sit here and tell you that I can prove to you beyond a reasonable
doubt any of those injuries were caused by him other than that he plead guilty to
recklessly causing the blunt force trauma to her abdomen.


The trial court agreed "that the broken ribs to the child and . . . the bruises that were several
days old, there is absolutely no evidence here that would support a finding that [the appellant]
had anything to do with that." The punishment hearing was then continued so that the parties
could research another, unrelated legal issue. The PSI was never formally introduced into
evidence, but it was included in the appellate record.

 On September 17, 2004, the hearing reconvened, and the trial court heard argument
from the parties. The appellant stressed his character witnesses. The State did not urge the
trial court to consider the extraneous injuries. Nevertheless, the trial court stated:

 I can only conclude from what I have seen that this child was brutally murdered,
brutally tortured. And, furthermore, I cannot believe, I cannot believe that if you
take these facts, my wife and I having had three children and two grandchildren
already, I cannot believe that - I find it unreasonable that anyone could believe
that the people who - the mother and father of the child could not have known
of these matters that I have discussed that are found in these medical records. 
And they are found in the autopsy - and there is no mention in the autopsy of the
broken legs.[ (8)] But that's the only conclusion I can reach in this case is that is
why this little child died. And sure, she died from a perforated intestine and so
we don't know all that went on. And we don't have - we don't have the facts and
circumstances that are - that led up to this little girl's death. But I do believe
that whatever went on, whatever happened to this little girl, I can only conclude
that [the appellant] not only knew about it - he has admitted to striking the girl,
but the injuries and damages that I see in the records don't - they don't come
about by one blow. They don't come about by one striking. And they didn't all
happen on November 19th when the baby died. I mean, when the baby was taken
to the hospital.


With this, the trial judge announced that he intended to assess punishment at twenty years'
incarceration, the maximum available for a second degree felony. He reset the proceedings
for October 1, 2004, however, to "leave the door open . . . and if evidence could be produced
that show my conclusions are wrong or that someone else did that then I would revisit the
issue[.]" (9) When, on October 1st, no further evidence was presented, the trial court formally
assessed the maximum punishment of a twenty year sentence and a $10,000 fine.

On Appeal

 The court of appeals began with the assumption that all extraneous offenses must be
proven beyond a reasonable doubt before a trial court may take them into account in assessing
punishment. From the trial court's announcement on September 17th, the court of appeals
deduced that, notwithstanding its pronouncement on September 8th that there was "absolutely
no evidence" to demonstrate that the appellant "had anything to do with" the extraneous
injuries, the trial court had nevertheless taken into account in assessing the appellant's
punishment that the appellant himself had committed those injuries, or that he was at least
aware that they were occurring and did nothing about them. A majority of the court of appeals
held that the evidence was insufficient to support the conclusion, beyond a reasonable doubt,
that the appellant actually caused any of the extraneous injuries. The majority also concluded
that the circumstantial evidence failed to support the inference, to a level of confidence
beyond a reasonable doubt, that the appellant was even aware that the injuries were taking place,
such that he could be found criminally responsible for them.

 Justice Yates dissented. She shared the majority's assumption that the State would have
to establish the appellant's criminal responsibility beyond a reasonable doubt before the trial
court could consider them. She disagreed with the majority's conclusion that the trial court
took into consideration that the appellant actually caused Kiana's injuries, but agreed that it had
considered the appellant's criminal responsibility for failing to do something about those
injuries. But she believed that the evidence circumstantially showed he must have been aware
of those injuries even if he did not commit them himself, (10) and that this inference was
sufficiently strong that the trial court could have found it to be so to a level of confidence
beyond a reasonable doubt. For this reason she did not regard the trial court's assessment of
punishment to have been erroneously tainted by consideration of the extraneous offenses.

 The SPA now challenges the assumption shared by both the majority and the dissenting
opinions below. The SPA argues that a PSI need not establish beyond a reasonable doubt that
an appellant was responsible for extraneous misconduct before a trial court is authorized to
consider that misconduct in assessing punishment under Article 37.07, Section 3(d) of the
Code of Criminal Procedure. We agree and hold that a PSI does not necessarily have to
establish beyond a reasonable doubt that the defendant is responsible for extraneous
misconduct before a court may consider it in assessing punishment. However, we also hold
that the PSI must provide the trial court with some basis from which it can rationally infer that
the defendant was responsible before using it to inform its normative judgment of what
punishment to assess within the statutorily prescribed range.

THE STATUTORY PROVISIONS

 This case involves the convergence of two statutory provisions: 1) Article 37.07,
Section 3(a)(1), which governs the "evidence" that "may be offered" at the punishment phase
of a criminal case, whether the sentence assessor is judge or jury, and 2) Article 37.07,
Section 3(d), which authorizes a trial court to "consider" the contents of the PSI as authorized
in Article 42.12, Section 9(a) in assessing punishment, without apparent limitation.

Article 37.07, Section 3(a)(1)

 Before it was amended in 1989, Article 37.07, Section 3(a) permitted at a punishment
hearing (before either judge or jury) only "the prior criminal record of the defendant, his
general reputation and his character." The statute went on to define "prior criminal record" to
mean "a final conviction in a court of record, or a probated or suspended sentence that has
occurred prior to trial, or any final conviction material to the offense charged." This statutory
language was construed generally to prohibit evidence of unadjudicated extraneous offenses. (11) 
In 1989, the Legislature amended the statute to permit the introduction of "any matter the court
deems relevant to sentencing, including" the defendant's prior criminal record. (12) This Court
continued to hold that unadjudicated extraneous offenses were not allowed, however, even after
this 1989 amendment. (13)

 Consequently, in 1993 the Legislature amended the statute again. This time the
Legislature expressly provided that, notwithstanding provisions in the Texas Rules of Evidence
governing the admissibility of extraneous bad acts generally, a trial court may permit the
introduction of "any other evidence of an extraneous crime or bad act[,]" regardless of whether
it has resulted in a criminal conviction. (14) But this express authority of the trial court to admit
evidence of any extraneous offense it deems relevant to sentencing is not unconditional. The
extraneous offense must be "shown" by the proponent of the evidence (usually the State)
"beyond a reasonable doubt . . . to have been committed by the defendant," or that "he could be
held criminally responsible, regardless of whether he has previously been charged with or
finally convicted of the crime or act." (15) Unless the extraneous misconduct evidence is such
that the sentencing entity (either judge or jury) can rationally find the defendant criminally
responsible for the extraneous misconduct, the trial court is not permitted to admit it at a
punishment hearing. (16) Moreover, once the evidence is admitted, the sentencing entity must
actually find (and if it is a jury, it must be instructed it must find) the defendant criminally
responsible to a level of confidence beyond a reasonable doubt before considering the
extraneous misconduct evidence against him in assessing his punishment within the
legislatively prescribed range. (17)

 Thus, the Legislature simultaneously expanded the range of misconduct evidence the
trial court is authorized to admit at a punishment hearing, while at the same time placing a
conditional limitation upon any misconduct evidence that has not become a part of the
defendant's prior criminal record. It seems unlikely that this conditional limitation reflects
a legislative determination that extraneous misconduct evidence not shown to have been
committed by the defendant beyond a reasonable doubt cannot reasonably be deemed relevant
at the punishment phase of trial. (18) More likely the conditional limitation instead reflects a
legislative policy judgment that evidence of extraneous misconduct not shown to have been
committed by the defendant to this elevated level of confidence will invariably prove, though
perhaps the trial court could reasonably deem it relevant, nevertheless to be more prejudicial
than probative in the assessment of his punishment-or at least frequently enough that a case-by-case balancing approach would not be worth the candle. (19)

Articles 42.12, Section 9(a) and 37.07, Section 3(d)

 Article 42.12, Section 9(a) defines what a PSI may contain, including, inter alia, "any
other information relating to the defendant or the offense requested by the judge." Here, the
trial court expressly asked that the community supervision officer include information from 
the victim's medical records, which may reasonably be regarded as "information relating to .
. . the offense." It was from these records that Hugo gleaned the information she included in
the PSI about the extraneous injuries the victim suffered. In view of Article 37.07, Section
3(a)(1)'s conditional limitation upon the admission of extraneous misconduct evidence, should
the trial court have satisfied itself that the appellant committed that misconduct beyond a
reasonable doubt before "considering" it, as it was otherwise authorized to do under Article
37.07, Section 3(d), in assessing what punishment to assess?

 Section 3(d) of Article 37.07 was added in 1981. (20) Prior to that time, this Court had
vacillated somewhat with respect to the purpose of a PSI. The question was whether a trial
court could consider a PSI only for purposes of deciding whether to impose probation, or it
could also consider the PSI in making the broader determination of what punishment to assess
within the statutory range. (21) We ultimately came down on the side of the former, holding that,
at least before the 1981 amendment, the sole purpose of the PSI was to facilitate the probation
decision. (22) Indeed, because the PSI was originally intended only to facilitate the probation
decision, we were not troubled that it might contain what would be, at a formal punishment
hearing, patently objectionable as rank hearsay (23) or evidence of an unadjudicated extraneous
offense (such as a pending indictment (24) or an arrest record (25)). Presiding Judge Onion observed
in a concurring opinion that "[w]hile many of these matters can be considered in passing upon
the issue of probation, they would not be considered admissible on the issue of guilt or upon
the issue of punishment." (26) He believed the latter to be true because Article 37.07, Section
3(a), as it then read, "does not permit the introduction of arrests not resulting in convictions,
hearsay, etc." (27)

 The 1981 amendment changed all that. For the first time the statute authorized the trial
judge to order a PSI for the express purpose of informing his decision of what punishment to
assess within the statutorily prescribed range. And the change led Judge Onion to observe, in
a later concurring opinion, that the practice of ordering a PSI for punishment assessment had
been "legitimized," and that otherwise-objectionable matters "may now be properly considered
by the court using the pre-sentence report to determine punishment as well as the issue of
probation." (28)

 All of this preceded the 1993 amendment to Article 37.07, Section 3(a)(1). The 1993
amendment clearly broadened "the categories of potentially admissible evidence at
punishment." (29) But as to at least one of those new categories, namely, extraneous misconduct
evidence, the amendment expressly added a condition: proof beyond a reasonable doubt. By
conditioning the admissibility of extraneous misconduct evidence at a punishment hearing
upon a showing that the defendant committed that misconduct beyond a reasonable doubt, did
the Legislature also intend to narrow the scope of the "consideration" to which a trial judge can
put extraneous misconduct evidence that appears in a PSI? If he finds that the PSI fails to
establish the defendant's criminal responsibility for the extraneous misconduct to that high
level of confidence, may he still consider it in assessing punishment, or must he instead
restrict his consideration of the misconduct evidence to the question of whether community
supervision should be imposed?

ANALYSIS

 The SPA argues that, consistent with our opinion in Freyer v. State, (30) we should hold
that a trial court may consider extraneous misconduct that is not proven to have been
committed by the defendant beyond a reasonable doubt in assessing punishment. We agree. 
In Freyer, the defendant objected to a portion of a PSI in which the victim expressed an
opinion as to the appropriate punishment for the offense. On appeal he claimed, inter alia, that
for the trial court to consider this information in the PSI would violate Rule 702 of the Texas
Rules of Evidence, as well as statutory provisions governing victim impact statements. (31) We
held that the rules of evidence do not control what may be included in a PSI (and, by
implication, what a trial court may consider in a PSI). (32) As for the victim impact provisions,
we held that, because the Legislature enacted them later in time than the 1981 amendment
authorizing trial courts to consider PSIs in assessing punishment, "we find them to be
inapposite in interpreting the meaning of the PSI statutes." (33) We similarly conclude that the
1993 amendment to Article 37.07, Section 3(a)(1), should not inform our construction of the
1981 amendment adding Article 37.07, Section 3(d).

 Prior to the 1993 amendment to Section 3(a), we steadfastly construed it to prohibit
evidence of unadjudicated extraneous misconduct at a formal punishment hearing. (34) We can
find no case law between the 1981 addition of Section 3(d) and the 1993 amendment to
Section 3(a) that authoritatively holds that unadjudicated extraneous misconduct, though still
inadmissible at a punishment hearing, could nevertheless be taken into consideration by the
trial court, not just in determining whether to grant probation, but in assessing punishment
generally. There is only the footnote in Presiding Judge Onion's concurring and dissenting
opinion in which he assumes that "these matters may now be properly considered" by the trial
court in assessing punishment. (35) Nevertheless, the Legislature could have been aware of
Presiding Judge Onion's view when it amended Section 3(a) in 1993. The Legislature could
have believed that, were the question to come squarely before us, we would likely construe
Section 3(d) to allow the trial court to consider unadjudicated extraneous misconduct if it is
contained in a PSI, even though he could not consider it if only offered into evidence at a
formal punishment hearing under Section 3(a). (36)

 For this reason we think that, had the Legislature intended to restrict the scope of what
a trial court is authorized to consider in a PSI, it would have amended, not only Section 3(a)
of Article 37.07, but Section 3(d) as well. In making extraneous misconduct evidence
expressly admissible for the first time in a punishment hearing (albeit, only if it is shown that
the accused was criminally responsible beyond a reasonable doubt), the Legislature clearly
intended to widen, not narrow, the scope of what the sentencing entity may consider in
assessing punishment. (37) The plain language of Section 3(d), on its face, continues to place no
condition on the trial court in considering the contents of a PSI. Had the Legislature intended
to place a condition where it likely perceived that none existed before, we do not think it would
have amended only the provision that governs admissibility of evidence at a formal punishment
hearing. The Legislature would also have amended the provision authorizing consideration of
a PSI as well. (38) It would have expressly provided, in Section 3(d) itself, that a trial court's
consideration of extraneous misconduct in a PSI is conditioned upon sufficient information
in the PSI to show beyond a reasonable doubt that the defendant was criminally responsible for
it.

 We therefore hold that Section 3(a)(1) of Article 37.07 does not prohibit a trial court,
as a sentencing entity, from considering extraneous misconduct evidence in assessing
punishment just because the extraneous misconduct has not been shown to have been
committed by the defendant beyond a reasonable doubt, if that extraneous misconduct is
contained in a PSI. Several courts of appeals have already so held. (39) We think the court of
appeals in this case, both majority and dissenting opinions, erred to assume otherwise.

DISPOSITION

 The United States Supreme Court has long recognized that due process does not require
that a trial court must glean all relevant information from evidence presented in a formal
courtroom proceeding in assessing punishment within the legislatively prescribed range. (40) This
is not to say, of course, that a state's sentencing procedure is wholly "immune from scrutiny
under the due-process clause." (41) We think it obvious that it would violate due process for a
trial court to consider evidence of extraneous misconduct, even contained in a PSI, if there was
no evidence from any source from which it could be rationally inferred that the defendant had
any criminal responsibility for that extraneous misconduct. To the extent the record supports
the conclusion here that the trial court took into consideration that the appellant actually
caused Kiana's extraneous injuries, this would violate due process, since the record would not
support that finding to any level of confidence. The majority and dissenting justices in the
court of appeals disagreed on whether the record demonstrates that the trial judge really did
incorporate the unsupported assumption that the appellant actually caused Kiana's broken ribs
and extraneous abdominal injuries into his punishment-assessment calculus. We find the
record, as summarized above, to be impossibly ambiguous with respect to that question.

 We therefore affirm the judgment of the court of appeals, albeit for reasons entirely
different than that court gave. The cause is remanded to the trial court for reassessment of
punishment. In reassessing punishment, the trial court is free to consider any reasonably
available inference deriving from the PSI that the appellant knew about and failed to respond
to Kiana's extraneous injuries, regardless of whether the PSI establishes his knowledge to a
level of confidence beyond a reasonable doubt. (42) But the trial court may not consider the
appellant to have been criminally responsible for directly causing those extraneous injuries
based upon what is currently in the PSI. (43)


Delivered: June 27, 2007 

Publish
1. Smith v. State, ___ S.W.3d ___ (Tex. App.--Houston [14th], No. 14-05-00031-CR, June 26,
2006) (not yet reported).
2. Tex. Code Crim. Proc. art. 37.07, § 3(a)(1) ("Regardless of the plea and whether the
punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant
as to any matter the court deems relevant to sentencing, including but not limited to . . . any other evidence
of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been
committed by the defendant or for which he could be held criminally responsible, regardless of whether he
has previously been charged with or finally convicted of the crime or act.").
3. Tex. Code Crim .Proc. art. 42.12, § 9(a) (" . . . before the imposition of sentence by a judge
in a felony case . . . the judge shall direct a supervision officer to report to the judge in writing on the
circumstances of the offense with which the defendant is charged, the amount of restitution necessary to
adequately compensate the victim of the offense, the criminal and social history of the defendant, and any
other information relating to the defendant or the offense requested by the judge.").
4. Tex. Code Crim.Proc. art. 37.07, § 3(d) ("When the judge assesses the punishment, he may
order an investigative report as contemplated in Section 9 of Article 42.12 of this code and after
considering the report, and after the hearing of the evidence hereinabove provided for, he shall forthwith
announce his decision in open court as to the punishment to be assessed.").
5. We also granted review of the SPA's contention that the court of appeals erred in failing to
address whether the appellant had preserved error with respect to his appellate complaint that the trial court
erred to consider the extraneous misconduct contained in the PSI. However, upon a fuller review of the
appellate record, the SPA has filed a motion to dismiss this particular ground in his petition. We therefore
dismiss that ground as improvidently granted.
6. The appellant produced ten reputable witnesses, including family members and friends, former
employers, and the elected Criminal District Attorney of an adjoining county, to testify to the appellant's
good character for peaceableness and his ability to abide by the terms and conditions of probation. At a
later hearing, after the trial judge announced that he intended to sentence the appellant to the maximum
sentence of twenty years for a second degree felony, he had this to say about the appellant's character
witnesses:


 And I do want to say this about the wonderful witnesses that were brought here. 
My friend, Bill Bennett [the Criminal District Attorney from the adjoining county], my friend
who is out here today - and I know how much he thinks of this family and I have great
respect for what you have said. Talking about [one of the appellant's former employers]. 
I have great respect for you coming up here and giving your opinion about this man, and
no doubt it's true. I believe every word you have said. And I certainly believe Bill
Bennett, the District Attorney over in Madison County who is my dear friend and who I
admire very much. And the other people, wonderful family. But I can't walk away from
a five month old child who has been injured in that way. And that will be all for the day.
7. According to the PSI, the appellant and Kiana's mother, Diretha Jones, were not married at the
time of the offense, but had "been together for approximately one year" and subsequently did get married. 
Jones was also indicted for capital murder, but the indictment against her was dismissed in 2003, "due to
insufficient evidence" - again, according to the PSI. The trial court would later state on the record that the
facts showed that the appellant and Diretha did not live together at the time of the offense. Our review of
the appellate record, however, does not clearly indicate one way or the other whether, in fact, they were
living together at that time, although the tenor of the appellant's statement, as summarized in the PSI,
suggests not.
8. Prior to hearing the arguments of the parties, the trial judge had announced on the record that he
had reviewed "the source documents to the PSI," including certain medical records and the autopsy report,
none of which was made a part of the record. The appellant objected that the trial court's consideration
of these materials violated his right of confrontation under the Sixth Amendment, but did not reiterate this
particular complaint on appeal. After the parties argued, and immediately before making the statement
quoted in the text above, the trial judge observed that he had read about the victim's two broken legs in
an offense report, but because he found no mention of them in the autopsy, "I don't really consider this in
assessing whatever punishment in this case[.]" He made no such express assurance, however, with respect
to the extraneous abdominal bruising or the fractured ribs.
9. Emphasis added.
10. In her view, the appellant would have been guilty under these circumstances of the state jail felony
of endangering a child under Section 22.041(c) of the Texas Penal Code. This provision makes it an
offense to "intentionally, knowingly, recklessly, or by criminal negligence, by act or omission, engage[ ] in
conduct that places a child younger than 15 years in imminent danger of death, bodily injury, or physical
or mental impairment."
11. See Murphy v. State, 777 S.W.2d 44, at 57, 61 (Tex. Crim. App. 1989) (plurality opinion on
State's motion for rehearing) (under then-extant Article 37.07, Section 3(a), "general rule" was that
unadjudicated bad acts were inadmissible at punishment phase, and statute was never construed "to
authorize character evidence in the form of specific misconduct, except, of course, inasmuch as that
misconduct has become a part of the 'prior criminal record' of the accused").
12. See Acts 1989, 71st Leg., ch. 785, § 4.04, p. 3492, eff. Sept. 1, 1989.
13. Grunsfeld v. State, 843 S.W.2d 521, 526 (Tex. Crim. App. 1992).
14. See Acts 1993, 73rd Leg., ch. 900, § 5.05, p. 3759, eff. Sept. 1, 1993.
15. Id.
16. Mitchell v. State, 931 S.W.2d 950, 953 (Tex. Crim. App. 1996) (plurality opinion); see also id,
at 956-57 (Meyers, J., concurring) (trial court should admit extraneous misconduct evidence under current
Article 37.07, Section 3(a)(1) "upon condition that proof be adduced by the State sufficient to convince
a rational juror beyond a reasonable doubt that appellant was actually responsible for the extraneous
offense proven").
17. Id. at 954; see also id., at 957 (Meyers, J., concurring).
18. For example, in the federal system, extraneous offense evidence offered at the guilt phase of trial,
for some legitimate purpose other than its mere character-conformity value, may rationally be deemed
"relevant" even if it is shown only by a preponderance of the evidence that the defendant committed it. 
Huddleston v. United States, 485 U.S. 681 (1988).
19. Cf. Montgomery v. State, 810 S.W.2d 372, 387 (Tex. Crim. App. 1991) (opinion on rehearing
on Court's own motion) (Rule 404(b) of the Texas Rules of Criminal Evidence reflects a policy decision
by the rulemakers that evidence of extraneous misconduct at the guilt phase of trial having no relevance
apart from inferences of character conformity is more prejudicial than probative as a matter of law, and
trial court has no discretion to rule otherwise).
20. See Acts 1981, 67th Leg., ch. 639, § 1, p. 2466, eff. Sept. 1, 1981.
21. 

 Compare Angelle v. State, 571 S.W.2d 301, 302 (Tex. Crim. App. 1978) (" . . . whenever an
issue of the proper punishment is present a presentence investigation and report may be utilized to assist
the trial judge in the exercise of his discretion."), with, e.g., McNeese v. State, 468 S.W.2d 800, 801
(Tex. Crim. App. 1971) (trial court should "use the probation officer's report and take into consideration
all of the pertinent information to more intelligently determine if the person convicted is entitled to
probation"), Valdez v. State, 491 S.W.2d 415, 417 (Tex. Crim. App. 1973) (same), and Clay v. State,
518 S.W.2d 550, 555 (Tex. Crim. App. 1975) (same). See also Mason v. State, 604 S.W.2d 83, 84-90
(Tex. Crim. App. 1980) (Clinton, J., dissenting to denial of appellant's motion for rehearing) (describing
conflicting case law and opining that "Angelle is sui generis" and should not be followed).
22. Jackson v. State, 680 S.W.2d 809, 814 (Tex. Crim. App. 1984) (expressly adopting Judge
Clinton's dissenting view in Mason v. State, and overruling Angelle v. State, supra, at least for purposes
of cases "prior to the effective date of the 1981 amendment to Article 37.07, § 3(d)"). See Whitelaw v.
State, 29 S.W.3d 129, 133 (Tex. Crim. App. 2000).
23. E.g., Brown v. State, 478 S.W.2d 550, 551 (Tex. Crim. App. 1972) ("To suggest that the judge
should not use the information in the probation report because it contains 'hearsay statements' is to deny
the obvious purpose of the statute."); Lee v. State, 505 S.W.2d 816, 818 (Tex. Crim. App. 1974) ("[A]
court is not required to disregard hearsay statements in a pre-sentencing report.").
24. Clay v. State, supra.
25. McNeese v. State, supra; Valdez v. State, supra.
26. Nunez v. State, 565 S.W.2d 536, 539-540 (Tex. Crim. App. 1978) (Onion, P.J., concurring).
27. Id. at 540, n.1.
28. Tamminen v. State, 653 S.W.2d 799, 807, n.6 (Tex. Crim. App. 1983) (Onion, P.J., concurring
in part and dissenting in part).
29. Ellison v. State, 201 S.W.3d 714, 722 (Tex. Crim. App. 2006).
30. 68 S.W.3d 628 (Tex. Crim. App. 2002).
31. Id. at 630.
32. Id. at 631, citing Brown v. State, supra. We also noted that "[o]ther cases have held that a PSI
may contain-and a trial court may consider-evidence that could not have been introduced at the
punishment stage of trial due to its subject matter, such as an arrest record or a pending indictment." The
cases we cited in a footnote for this proposition, however, all pre-dated the 1981 amendment that added
Article 37.07, Section 3(d). Therefore, they stand for no more than the proposition that information about
an arrest record or a pending indictment in a PSI may be considered by the trial court in deciding the
appropriateness of granting probation. See notes 24 & 25, ante.
33. Id. at 633.
34. Grunsfeld v. State, supra.
35. Tamminen v. State, supra.
36. And indeed, in Freyer we later endorsed Presiding Judge Onion's view. 68 S.W.3d at 632.
37. Ellison v. State, supra.
38. The Legislature was not wholly unmindful of PSIs when it amended Article 37.07, Section 3(a),
in 1993. By another section of the same enactment, it also made a conforming amendment to Article
37.07, Section 3(d). But the only change made to Section 3(d) was to amend its reference to Article
42.12, from former Subsection 4 to its current placement in Subsection 9. See Acts 1993, 73rd Leg., ch.
900, § 5.01, p. 3743, eff. Sept. 1, 1993.
39. DuBose v. State, 977 S.W.2d 877, 880 (Tex. App.--Beaumont 1998, no pet.); Wilson v. State,
108 S.W.3d 328, 332 (Tex. App.--Fort Worth 2003, pet. ref'd); Bell v. State, 155 S.W.3d 635, 638-39 (Tex. App.--Texarkana 2005, no pet.).
40. Williams v. New York, 337 U.S. 241 (1949); Tamminen v. State, supra, at 802. See also
George E. Dix & Robert O. Dawson, 43 Texas Practice: Criminal Practice and Procedure §
38.162 (2d ed. 2001).
41. Williams v. New York, supra, at 252, n.18, citing Townsend v. Burke, 334 U.S. 736 (1948).
42. Of course, the appellant is also free on remand to comment on the PSI and, "with approval of the
judge, [to] introduce testimony or other information alleging a factual inaccuracy in the investigation or
report." Tex. Code Crim. Proc. art. 42.12, § 9(e).
43. Given this disposition, we need not address the SPA's second contention that the court of appeals
majority erroneously concluded that only by engaging in impermissible inference stacking could they
conclude that the PSI established that the appellant knew about Kiana's extraneous injuries beyond a
reasonable doubt. But see Hooper v. State, 214 S.W.3d 9, 15-17 (Tex. Crim. App. 2007).